CIBA–GEIGY CORPORATION, Appellant,

v.

Kenneth STEPHENS, Appellee.

No. 11–92–197–CV.

Court of Appeals of Texas, Eastland.

Feb. 24, 1994.

Rehearing Overruled March 24, 1994.

Portia J. Bott, Robert B. Summers, Michael J. Clark, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellant.

Kerwin B. Stephens, Stephens & Crawford, Graham, Barry Snell, Bayne, Snell & Krause, San Antonio, for appellee.

OPINION

DICKENSON, Justice.

*On Rehearing* [1]

This is a case under the Deceptive Trade Practices Act (DTPA), TEX.BUS. & COM.

---

1. Appellant's motion for rehearing is overruled. Appellee's motion for rehearing is sustained in

CODE ANN. § 17.41 et seq. (Vernon 1987 & Supp.1994).

Kenneth Stephens is a peanut farmer who sued Ciba–Geigy Corporation, the manufacturer of a fungicide which Stephens used to control "pod rot" in his 1987 peanut crop. When the crop was harvested, there was extensive pod rot damage which reduced the number of pounds and which also reduced the grade of the peanuts. The jury found that: Ciba–Geigy engaged in a "[f]alse, misleading or deceptive act or practice" and in an "unconscionable action or course of action"; Ciba–Geigy failed to comply with an express warranty; and these acts and omissions were the producing cause of damages. The jury found that the actual damages were $243,484.80. The trial court entered judgment on the verdict for $602,560.54 (actual damages, additional DTPA damages, and prejudgment interest compounded daily) plus 25 percent of that amount as attorney's fees. Ciba–Geigy appeals. We modify (eliminating the daily compounding of prejudgment interest) and affirm.

### Background Facts

Stephens is an experienced peanut farmer. In 1987, he planted over 1,800 acres of peanuts, and he used a fungicide named Ridomil PC11G. Stephens paid $95,961.00 to purchase the fungicide. Ciba–Geigy manufactured the fungicide, and its brochures represent that: "Ridomil PC controls seed and seedling rots caused by *Pythium spp.* and *Rhizoctonia solani.*" The fungicide controlled the "Pythium" fungus, but it failed to control the "Rhizoctonia" fungus. All of the witnesses agreed that Stephens' 1987 peanut crop had extensive pod rot damage.

One major dispute at trial was whether Stephens properly applied the fungicide. The other major dispute was when Stephens discovered the damage. Ciba–Geigy pleaded the two-year statute of limitations, but Stephens testified that he did not know of the fungicide's failure to perform as represented until he actually harvested the crop. The

jury resolved both disputes in Stephens' favor.

### The Jury's Verdict

Omitting the explanatory instructions, the questions submitted to the jury and the jury's answers can be summarized as shown:

(1) Did CIBA–GEIGY engage in any false, misleading, or deceptive act that was a producing cause of damage to KENNETH STEPHENS? Answer: Yes.

(2) Did CIBA–GEIGY engage in an unconscionable action or course of action that was a producing cause of damages to KENNETH STEPHENS? Answer: Yes.

(3) Was the failure of CIBA–GEIGY to comply with an express warranty a producing cause of damages to KENNETH STEPHENS? Answer: Yes.

(4) Did CIBA–GEIGY engage in any such conduct knowingly? Answer: Yes.

(5) By what date should KENNETH STEPHENS, in the exercise of reasonable diligence, have discovered all the false, misleading, deceptive acts or practices, unconscionable action, or failures to comply with a warranty of CIBA–GEIGY? Sept. 21, 1987.

(6) What sum of money, if any, if paid now in cash, would fairly and reasonably compensate KENNETH STEPHENS for his damages, if any, that resulted from the conduct you found to be a producing cause of damages to him?

A. Loss of Yield from 1987 peanut crop: $243,484.80.

B. Purchase price of the Ridomil PC11G: -0-.

(7) [Conditionally submitted upon a "yes" answer to Question 4] What sum of money, if any, in addition to actual damages, should be awarded to KENNETH STEPHENS against CIBA–GEIGY because CIBA–GEIGY'S conduct was committed knowingly? $225,000.00.

(8A) What is a reasonable fee for the necessary services of KENNETH STEPHENS' attorney in this case, stated in

part (as to calculation of prejudgment interest) and overruled in part. The opinion and judgment of this court dated January 27, 1994, are

withdrawn. This is now the opinion and judgment of this court.

dollars and cents? $75,000 for preparation and trial; $15,000 for an appeal to the Court of Appeals; $5,000 for making or responding to an application for writ of error; and $5,000 if an application for writ of error is granted by the Supreme Court.

(8B) What is a reasonable fee for the necessary services of KENNETH STEPHENS' attorney in this case, stated as a percentage of KENNETH STEPHENS' recovery? Answer: 25%.

(9) Did CIBA–GEIGY fail to comply with an express warranty which *proximately* caused damages to KENNETH STEPHENS? Answer: No. (Emphasis added)

(10) Did KENNETH STEPHENS fail to exercise ordinary care in the application of Ridomil PC11G that proximately caused his damages? Answer: No.

(11) Find from a preponderance of the evidence the respective percentages by which each proximately caused the occurrence.

CIBA–GEIGY 75%.

KENNETH STEPHENS 25%.

(12) No answer required because of conditional submission and negative answer to Question 9.

### Points of Error

Appellant has briefed 14 points of error. In its first two points, appellant challenges the trial court's discovery sanction which excluded the undisclosed portions of testimony from two witnesses. The next three points relate to the claim that Stephen's suit is barred by the two-year statute of limitations. Appellant argues that its limitation defense was conclusively established, that there is no evidence to support the jury's answer to Question 5, and that this answer is against the great weight and preponderance of the evidence. Appellant also argues that the trial court erred in using the word "all" in Question 5.

Appellant argues in Point 6 that the trial court erred by compounding the prejudgment interest daily. Appellant argues in Point 7 that the jury instruction on Question 6 "improperly commented on the weight of the evidence and nudged the jury." Appellant argues in Point 8 that the trial court erred in entering judgment for consequential damages because of its "legally valid limitation of liability or disclaimer." In Points 9, 10, 11, 12, and 14, appellant urges no evidence (and insufficient evidence) challenges to the jury's answers to Questions 2, 4, 7, 6(A), and 9 respectively. Appellant contends in Point 13 that the jury's answers to Questions 1, 2, 3, 4, and 7 are in "irreconcilable conflict" with the jury's answer to Question 9.

We sustain the sixth point of error. The other points have been considered and overruled.

### Sanction for Discovery Abuse

[1] Among the interrogatories which were propounded to Ciba–Geigy by Stephens under TEX.R.CIV.P. 168 was the following:

4. Please state the name, address and qualifications of each expert whom you expect to call as an expert witness at the trial of this case, the subject matter concerning which the expert expects to testify, and attach a copy of any report, including factual observations and opinions, which has been prepared by any such expert.

The original response to that interrogatory was filed by Ciba–Geigy on October 26, 1990, and it reads in full as shown:

This Defendant would object to this Interrogatory wherein it requires information in addition to that required by the Texas Rules of Civil Procedure. Subject to such objection, this Defendant would answer that it has not yet made any determination as to what, if any, expert witnesses may be needed in the defense of this cause of action. Further, this Defendant will not be in a position to make such a decision until such time as the Plaintiff's complaints and factual basis therefor has been made known.

Ciba–Geigy supplemented this response on January 2, 1992 (50 days before the trial), naming 19 persons (including Eileen Watson, Ph.D. and Everett Cowett, Ph.D.) as experts "who may be called" as expert witnesses at the trial of this case; however, Ciba–Geigy did not provide "the subject matter concern-

ing which the expert expects to testify," information which Stephens was entitled to receive under TEX.R.CIV.P. 166b(2)(e)(1). Ciba–Geigy had provided Stephens with Dr. Watson's report on certain test results on Stephens' peanut crop, and depositions had been taken from some of the persons named in the supplemental response. The record shows the following ruling which was made by the trial court on the fourth day of trial, after hearing arguments of counsel and reviewing the discovery request, objection, and supplemental response:

> THE COURT: [T]he defense has failed to comply with a proper discovery request.... I'm not going to exclude all of the defense testimony, I think a proper sanction in this matter is not complete exclusion, *but exclusion to the extent that experts, and their impressions and their reports have not been furnished.* To the extent that an expert's deposition has been taken, he will be allowed to testify in accordance with the deposition. To the extent that an expert's reports [have been furnished,] they'll be allowed to testify in accordance with the report, not otherwise. To the extent that an expert has just been named, but the subject matter has not been identified, they'll not be allowed.

We find that the trial court did not abuse its discretion in this ruling. When Ciba–Geigy undertook to supplement its response by naming its potential expert witnesses, it should have identified "the subject matter on which [each] witness is expected to testify." This was requested in the interrogatory, and it is discoverable under Rule 166b(2)(e)(1). The fact that Ciba–Geigy objected to one portion of the interrogatory did not excuse it from complying with the portion of the interrogatory which was not subject to the objection. Points 1 and 2 are overruled.

### Statute of Limitations

■ Appellant states in its brief that Stephens "did not file this lawsuit within the applicable two-year statute of limitations." [2] Appellant admits that the suit was filed on September 11, 1989, but argues that the record "overwhelmingly establishes" that Ste-

phens knew in August of 1987 that the Ridomil PC11G "had not performed" and that this "would have put any reasonable person on notice of the damages." The jury resolved this dispute by finding in answer to Question 5 that the date of discovery of all of Stephens' causes of action was September 21, 1987; consequently, the lawsuit was timely filed unless one or more of the next three points of error are sustained.

We hold that appellant failed to conclusively establish that Stephens knew in August of 1987 that the Ridomil PC11G had not performed and that there is evidence to support the jury's answer to Question 5. The jury was free to believe the testimony that Stephens gave on this disputed issue. Stephens testified that his knowledge of some pod rot in the peanut fields in August was not alarming and that it did not put him on notice of the extensive pod rot which was discovered when the crop harvest began in September. Even appellant's witnesses testified that the Ridomil PC11G would only control, not eliminate, pod rot. Consequently, Points 3 and 4 are overruled.

■ Appellant complains that the word "all" should not have been used in Question 5. That question is based upon 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 102.23 (1990). The "comment" following that pattern jury charge states:

> Since to prevail, a plaintiff need only prove one act or practice that is not time barred, the question seeks to determine the date the plaintiff discovered or should have discovered the latest of the wrongful acts that were a producing cause of damage. If the answer is within the two-year period, the limitations defense does not apply.

The trial judge did not err by following the recommended jury charge on this issue. Point 5 is overruled.

### Daily Compounding of Prejudgment Interest

■ This lawsuit was filed on September 11, 1989. This was after the effective date of the 1987 amendments to TEX.REV.CIV.

---

2. See TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987).

STAT.ANN. art. 5069–1.05 (Vernon Supp. 1994); consequently, the trial court erred by compounding the prejudgment interest on a daily basis. Section 6(g) of Article 5069–1.05 specifically provides:

> The rate of prejudgment interest shall be the same as the rate of postjudgment interest at the time of judgment and *shall be computed as simple interest.* (Emphasis added)

Stephens argues that this provision is not applicable because he seeks "economic losses" and that this is not a "property damage" case within the meaning of Section 6(a) of Article 5069–1.05 which provides:

> Judgments in wrongful death, personal injury, and *property damage* cases must include prejudgment interest. (Emphasis added)

Stephens argues that his lawsuit is governed by the rules created by *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex. 1985). We do not agree. It seems clear that Stephens seeks to recover for damages to his peanut crop. This is a property damage claim, and it is subject to the 1987 amendment to the prejudgment interest statute which eliminated the daily compounding of prejudgment interest.

The two cases which Stephens cites for the proposition that "economic loss" cases are not property damage cases within the meaning of the statutory amendments are clearly distinguishable. *Spangler v. Jones,* 861 S.W.2d 392 (Tex.App.—Dallas 1993, writ requested), deals with a breach of fiduciary duty. *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Company, Inc.,* 849 S.W.2d 894 (Tex.App.—Austin 1993, no writ), deals with conversion and unfair competition.

We sustain the sixth point of error. Consequently, the first two paragraphs following "IT IS THEREFORE ADJUDGED:" in the judgment of the trial court are modified to read as follows:

> (1) Plaintiff KENNETH STEPHENS shall have and recover $576,015.98 from Defendant, CIBA–GEIGY CORPORATION, with interest thereon at the rate of 10% per annum from the date of judgment until paid, said amount consisting of actual damages in the amount of $243,484.80, together with prejudgment interest at the rate of 10% per annum, computed as simple interest, from January 1, 1988, through May 1, 1992 ($105,531.18); plus $2,000.00 representing twice that portion of Plaintiff's actual damages which do not exceed $1,000.00 as provided in TEX.BUS. & COM.CODE ANN. § 17.50(b)(1), plus additional damages as awarded by the jury in the amount of $225,000.00;

> (2) Plaintiff KENNETH STEPHENS shall have and recover reasonable and necessary attorney fees against CIBA–GEIGY CORPORATION in the amount of $144,004.00 representing 25% of the above recovery as found by the jury;

The other seven numbered paragraphs in the trial court's judgment are affirmed.

### Instruction on Proof of Damages

Ciba–Geigy complains of the following instruction which related to Question 6:

> Plaintiff must prove his damages, if any, with a reasonable degree of certainty. This does not, however, require proof as to an absolute mathematical certainty if a wrong has been done from which monetary loss results, you may make a just and reasonable estimate of damages based on relevant data, including opinion evidence, even if the extent of the injury cannot be proven precisely. Damages cannot be remote or contingent.

Ciba–Geigy concedes that *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768 at 831 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. den'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988), did not find error when a similar instruction was submitted over Texaco's timely objection. Appellant argues that the holding in *Texaco, Inc. v. Pennzoil Co.,* supra, "is highly questionable." We disagree. That holding withstood scrutiny by the Supreme Court of Texas and also by the Supreme Court of the United States. The seventh point of error is overruled.

### Limitation of Liability by Disclaimer

The disclaimer of liability does not bar Stephens' recovery for a "false, mislead-

ing, or deceptive act" by Ciba–Geigy,[3] nor does it bar Stephens' recovery for "an unconscionable action or course of action" by Ciba–Geigy.[4] TEX.BUS. & COM.CODE ANN. § 17.42 (Vernon Supp.1994) specifically provides that:

Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void.

None of the statutory exceptions to Section 17.42 are applicable; consequently, the trial court did not err in entering judgment for Stephens in spite of the disclaimer which Ciba–Geigy had placed on its product. The eighth point of error is overruled.

### No Evidence and Insufficient Evidence Points

 When reviewing the no evidence points of error, we will only consider the evidence that supports the jury findings and disregard all evidence to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 at 265 (Tex.1974). When deciding the factual sufficiency and excessive damage points of error, we will consider and weigh all of the evidence. *Pool v. Ford Motor Company*, 715 S.W.2d 629 at 634 (Tex.1986); *In re King's Estate*, 244 S.W.2d 660 at 661 (Tex.1951). Ciba–Geigy's burden on appeal is to show that the jury's findings are "so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re King's Estate*, supra at 661. The jury has the responsibility for deciding factual disputes, and the jury is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Benoit v. Wilson*, 239 S.W.2d 792 at 796 (Tex.1951). We are not free to substitute our judgment or opinion for that of the jury. *Pool v. Ford Motor Company*, supra at 634.

The Supreme Court created a requirement in *Pool v. Ford Motor Company*, supra at 635, that, "when reversing on insufficiency grounds," the court of appeals should "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." There is no requirement to set forth the evidence in detail when the jury's verdict is upheld, and it would unnecessarily lengthen this opinion to review all of the testimony and exhibits from this trial.

 This court does find that there was evidence to support each of the jury's answers which have been challenged and that those answers are not "so against the great weight and preponderance of the evidence as to be manifestly unjust." The jury was free to reject the testimony from Ciba–Geigy's witnesses and to accept the testimony from Stephens and his witnesses. We note that much of Stephens' case was corroborated, at least in part, by witnesses who were tendered by Ciba–Geigy.

The record contains evidence from which the jury could believe the following facts. Kenneth Stephens has been growing peanuts in the Poteet, Texas, area since 1958. He employs seven full-time employees, and he hires additional help as needed. The two men who planted the peanuts and applied the Ciba–Geigy fungicide in 1987 had worked for Stephens for many years and were still working for him at the time of trial. Stephens has been a director of the Atascosa County Peanut Growers Association and of the local underground water district. Stephens' peanut farming operation had been the subject of articles in several national farming publications, and Stephens had been a panelist on a program for Ciba–Geigy. In 1987 several experts spoke at the "Peanut Disease Symposium of South Texas." One of the main reasons for that program was to tell the local peanut farmers about a new Ciba–Geigy product, Ridomil PC11G, which was designed to be applied directly to the peanut plants in granular form rather than being broadcast throughout the peanut field in the irrigation water. Literature was furnished to the farmers by Ciba–Geigy which contained these representations about the benefits of its new product:

[Y]ou don't need to worry about planting early or losing your crop to pod rot later

---

**3.** See the jury's answer to Question 1.

**4.** See the jury's answer to Question 2.

because you have Ridomil PC to help protect your crop.

\* \* \* \* \* \*

Ridomil PC controls seed and seedling rots caused by *Pythium spp.* and *Rhizoctonia solani.* An early pegging application of Ridomil PC controls these same diseases that cause pod rot and provides suppression of *Sclerotium rolfsii.*

Ridomil PC should be used for early planted peanuts in fields with a history of seed and seedling rots and pod rot.

\* \* \* \* \* \*

With Ridomil PC at early pegging, you continue disease control for the developing pods, protecting them from damaging pod rot. And the results are evident at harvest with a high yielding crop and a bin full of clean peanuts without black hulls.

Stephens and his employees testified that he and his men applied the Ciba–Geigy product as recommended by the speakers at that symposium. When the crop was harvested, there was extensive pod rot. Even the Ciba–Geigy witnesses agreed that there was a large amount of pod rot. Clearly, this reduced the yield and quality of the peanut crop. There was testimony that damage to the peanut crop amounted to $468,628.00. The jury resolved that portion of the dispute by finding actual damages of $243,484.80.

There was evidence that some of the Ciba–Geigy employees knew of reports that the Ridomil was not effective at the rates which other Ciba–Geigy employees were recommending at the time Stephens planted and treated his 1987 peanut crop. When the loss was discovered, Ciba–Geigy attempted to blame Stephens for the method which he used to apply the fungicide to his crop. The chemical controlled the Pythium, but it failed to control the Rhizoctonia. The jury was free to believe that, if the chemical had not been applied in accordance with the recommendations, it would have also failed to control the Pythium fungus.

Points 9, 10, 11, 12, and 14 are overruled.

### Claimed Conflict in Jury's Answers

■■ Appellant argues that there is a fatal conflict in the jury's answers to Questions 1, 2, 3, 4, and 7 when compared to the jury's answer to Question 9. There is no conflict because Question 9 required a finding of proximate cause, and the other issues related to producing cause. Moreover, Ciba–Geigy failed to object to the jury's answers before the jury was discharged; consequently, this complaint was waived. *Roling v. Alamo Group (USA), Inc.,* 840 S.W.2d 107 at 109 (Tex.App.—Eastland 1992, writ den'd). The thirteenth point of error is overruled.

### This Court's Ruling

The judgment of the trial court is modified as shown under our discussion of Point 6. As modified, the judgment of the trial court is affirmed.

Modified and affirmed.