## CORNERSTONES MUNICIPAL UTILITY DISTRICT, Appellant,

v.

## MONSANTO COMPANY, Armco, Inc., Armco Steel Company, and Turner, Collie & Braden, Inc., Appellees.

### No. C14-92-00204-CV.

Court of Appeals of Texas, Houston (14 Dist.).

Nov. 10, 1994.

Rehearing Overruled Dec. 8, 1994.

Richard Warren Mithoff, Tommy Jacks, Scott Rothenberg, Scott Douglas Cunningham, Houston, for appellant.

Robert Quinn, Charles W. Lyman, Kenneth E. McKay, Jeff Joyce, John L. Hill, Jr., Christopher B. Allen, Houston, for appellees.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION ON REMAND

ROBERTSON, Justice.

This appeal is from a summary judgment based on limitations in favor of appellees, Monsanto Company ("Monsanto"), Armco, Inc. and Armco Steel Company (together "Armco"), and Turner, Collie & Braden, Inc. ("TCB"). In the original appeal, based on the first point of error concerning the interpretation of section 16.061 of the Texas Civil Practice and Remedies Code, this court reversed and remanded. 845 S.W.2d 444. After determining that section 16.061 does not apply to a municipal utility district so as to exempt it from defenses of limitations, the supreme court remanded this cause for our consideration of points of error two through seven raised by appellant, Cornerstones Municipal Utility District ("CMUD"). *Monsanto Co. v. Cornerstones Municipal Utility Dist.*, 865 S.W.2d 937, 940–41 (Tex.1993). We affirm.

On July 13, 1989, CMUD sued appellees and others for defects in its sanitary sewer system it claims were caused by inferior quality pipes and improper installation during construction of the system. Its claims included negligence, strict liability, fraud, breach of warranty, and violations of the Texas Deceptive Trade Practices Act (DTPA). TEX.BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 1987 & Supp.1994). The trial court granted appellees' motions for summary judgment as to all causes of action, and severed the remaining defendants from this suit. This appeal resulted.

## STANDARD OF REVIEW

The rules to be followed in reviewing a summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

 A defendant is entitled to summary judgment based on an affirmative defense if it proves as a matter of law all the elements of the affirmative defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). When a defendant seeks summary judgment based on the statute of limitations, it must prove when the cause of action accrued and must negate the applicability of the discovery rule if pled by the non-movant. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

 As a preliminary matter, we address point of error five, where CMUD contends the trial court erred in entering summary judgment on limitations without first requiring special exceptions. Special exceptions are required before summary judgment only if a plaintiff has failed to state a cause of action. *Tex. Dept. of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974). CMUD clearly pled each cause of action. We overrule CMUD's fifth point of error.

## FACTUAL BACKGROUND

On March 6, 1978, CMUD contracted with TCB for design and engineering services in the construction of its sewer system. Armco manufactured the plastic pipe used in the system. Monsanto supplied the plastic resin used to fabricate the pipe. The general contractor for the project, Big Southern Construction Company, subsequently went out of business and is not a party to this appeal.

The construction of the system was completed by April 17, 1984. The board of directors for CMUD became aware of settling problems along a major line under a street in December 1985. This portion of the line was videotaped and tested with dye in January 1986, and it appeared there was a hole that needed to be repaired. After a lengthy process of preparing plans and obtaining permits and bids, the repair work began in February 1987. During this repair work, further cracks were discovered and it appeared that there may have been insufficient cement-stabilized sand bedding of the pipes. Sixty feet of damaged line was replaced at a cost of over $35,000. According to the board's minutes from the February 16, 1987 meeting, TCB's engineer, Michael Miller, recommended televising the rest of the line to assess further damage, and the board's attorney, Lynne Humphries of Vinson & Elkins, recommended retaining a sample of the damaged pipe for analysis. She also advised that she would check to see if the original contractor, who had gone out of business, was conducting business as another entity. At the March 1987 meeting, Miller notified the board where he had stored the pipe sample, and informed them the pipe showed no evidence of proper cement-stabilized sand bedding. The board discussed the extent of the engineer's responsibility for inspecting and approving the bedding. Miller noted cracks on the top, bottom, and sides of the pipe and told the board he had photographs of the excavation and damaged pipe. The cost of televising the rest of the line was also discussed.

At both the March 1987 and May 1987 board meetings, Humphries discussed possible litigation, including statutes of limitations and deadlines for filing suit. At the May meeting, legal action against the contractor and/or engineer was discussed, and Ms. Humphries advised that suit must be filed within four years of discovery of the problem, the statute of limitations was running, and a decision about filing suit must be made by 1988. The cost of televising the line, including two different bids, was again discussed at the May meeting.

On July 24, 1987, another 2500 feet of the line was televised. The tape showed a substantial amount of pipe was in poor condition,

cracked or broken. At the August 1987 board meeting, Humphries advised that suit must be filed by June 1989. CMUD contends that it was not aware of the system-wide defects until after the line was televised on July 24, 1987. Thus, CMUD argues it timely filed suit on July 13, 1989, less than two years later.

### THE STATUTES OF LIMITATIONS

CMUD makes alternative arguments as to which statute of limitations applies to its DTPA claims. CMUD asserts that the predecessor statutes to the DTPA's limitations provision apply because its cause of action arises from alleged violations of the Act occurring before August 27, 1979, when the DTPA was amended to provide a two-year limitations period. CMUD's position is that its claims accrued at the time the contracts were executed and the pipe was first ordered and shipped, which was prior to the 1979 amendment.

■■ In its second point of error, CMUD contends that its DTPA claims are governed by the four-year residual statute of limitations, formerly found in article 5529 of the Revised Civil Statutes [now TEX.CIV.PRAC. & REM.CODE ANN. § 16.051 (Vernon 1986)]. We hold that CMUD waived this issue by failing to raise it in the trial court until *after* the summary judgment hearing. CMUD argued in its response to the motions for summary judgment that articles 5526 and 5527 applied to its DTPA claims. It first raised article 5529 in its post-hearing brief. Any issue that a non-movant contends avoids the movant's entitlement to summary judgment must be expressly presented by written answer to the motion, and not in a brief. *McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 341, 343 (Tex.1993). All issues must be in writing and before the court at the time of the hearing. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979). CMUD contends the trial court expressly granted it permission to file a post-hearing brief on the issue of this residual statute as it relates to DTPA. This permission is not reflected in the record. A late filed response may be considered on appeal if leave of court is first obtained and the leave must be shown

in the record. *Aparicio v. Morgan,* 868 S.W.2d 16, 18 (Tex.App.—Corpus Christi 1993, no writ). We overrule CMUD's second point of error.

■ In its third point of error, CMUD alternatively claims that the four-year period in former article 5527 of the Revised Civil Statutes applies. A suit for statutory damages is an "action for debt." *See Overton v. City of Houston,* 564 S.W.2d 400, 403 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). Before 1979, there were two statutes of limitation that specifically applied to debts. The two-year statute, formerly article 5526 of the Revised Civil Statutes, applied to "actions for debt where the indebtedness is not evidenced by a contract in writing." TEX. REV.CIV.STAT.ANN. art. 5526 [now codified in its amended form as TEX.CIV.PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986)]. The four-year statute, formerly article 5527, covered "actions for debt where the indebtedness is evidenced by or founded upon any contract in writing." TEX.REV.CIV.STAT.ANN. art. 5527 [now codified in its amended form as TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986)]. CMUD contends its action is founded on its contract with TCB, executed in 1978. For its writing with Armco, CMUD refers to an invoice to the contractor for a portion of the pipe, and an acknowledgement of that order from Armco, both dated June 1979.

■ Appellees argue that even if the pre-1979 rule applies, CMUD's DTPA claim is still barred by the two-year limitations provision in article 5526. Prior to August 27, 1979, a cause of action under the DTPA was governed by the two year limitations provision in article 5526, unless the representation was evidenced by a written contract. *Marcotte v. American Motorists Ins. Co.,* 709 F.2d 378, 380 (5th Cir.1988); *Muss v. Mercedes–Benz of North America, Inc.,* 734 S.W.2d 155, 160–61 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *see also Mooney v. Harlin,* 622 S.W.2d 83, 84–5 (Tex.1981) (two-year period in article 5526 applied to action for fraudulent misrepresentation against executor probating will). For the four-year period to apply, it is necessary that the obligation "grows out of a written instrument, not re-

motely but immediately." *Holifield v. Coronado Bldg., Inc.,* 594 S.W.2d 214, 216 (Tex. App.—Houston [14th Dist.] 1980, no writ), quoting *Internat'l Printing Pressmen and Assistants' Union of North America v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 736 (1946); *see also Gibbs v. Main Bank of Houston,* 666 S.W.2d 554, 558 (Tex.App.— Houston [1st Dist.] 1984, no writ) (four-year statute applied where liability "immediately grew out of a transaction in writing"); *Jim Walter Homes, Inc. v. Chapa,* 614 S.W.2d 838, 840–41 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) (four-year statute applied where liability arose out of mechanic's lien contract).

CMUD's claims against TCB do not immediately arise out of any misrepresentations in the written contract, but instead are "laundry list" violations concerning claimed misrepresentations under section 17.46(b). *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(3), (5), (6), (7), (12), (19) and (23) (Vernon 1987). There are no representations as to the quality of the pipe or type of bedding to be used in TCB's contract.[1] Appellees point out the invoice and acknowledgement for the pipe sale is between Armco and the contractor, not CMUD, so there is no written representation given to CMUD by Armco. Moreover, the representations and warranties claimed to exist on the reverse side of these documents are not in our record. In addition, there is no writing in evidence for Monsanto. We conclude that because CMUD's claims do not immediately arise out of a written contract, the two year statute applies. We overrule point of error three.

Strict liability and negligence have two-year limitations periods, as set forth in TEX.

CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). Breach of warranty is governed by a four-year statute of limitations. TEX.BUS. & COM.CODE ANN. § 2.725 (Vernon 1968). These periods are not contested.

■ Before the 1979 amendments to articles 5526 and 5527 of the Revised Civil Statutes, fraud actions were governed by the two-year statute of limitations. There is no limitations statute expressly applying to fraud, but our supreme court has determined that a suit for fraud is considered, for limitations purposes, an action for debt. *Williams v. Khalaf,* 802 S.W.2d 651, 654 (Tex.1990). In 1979, the legislature amended these two limitations statutes for actions for debt to eliminate the distinction between debts evidenced by a writing and other debts, and to list all actions for debts under the four-year statute. Act of June 13, 1979, 66th Leg., R.S., ch. 716, § 2, 1979 Tex.Gen.Laws 1768 [current version at TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986)]. Therefore, the four-year period applies to all fraud actions accruing after the 1979 amendments. *Williams,* 802 S.W.2d at 658.

■ Appellees argue that since CMUD contends its causes of action accrued prior to the 1979 amendment to the DTPA, its fraud claim is also subject to the two-year statute of limitations. CMUD responds that the fraud statute was amended June 13, 1979, and appellees did not establish that CMUD's cause of action accrued before that date.[2] What CMUD fails to note is that while the amendatory act was dated June 13, 1979, it did not take effect until August 27, 1979, the same date as the effective date of the amendment to the DTPA. Therefore, because CMUD concedes its cause of action accrued

---

1. In fact, rather than expressly warranting its services, TCB's contract limited its liability, as follows:

> The Owner agrees that the Engineer shall not be liable for error, omission, or breach of warranty (either express or implied) in his preparation of designs and drawings, preparation of surveys, designation and selection of materials and equipment for the Project, or the performance of any other services ... except to the extent that he fails to exercise the usual degree of care and judgment of an ordinarily prudent engineer in the same or similar circumstances and conditions.

Attachment A to the contract further provided in part:

> [The Engineer] will not be responsible or liable in any degree for the contractors' failure to perform the construction work in accordance with the Contract Documents.

2. CMUD did not make this argument in its original brief, but raised it in its reply brief. Under our policy of liberal construction of the briefing rules, we consider CMUD's briefing sufficient to properly bring this issue before us. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 632–33 (Tex. 1986); TEX.R.APP.P. 74(p).

before August 27, 1979, the two-year limitations statute governs its fraud claim.

## THE DISCOVERY RULE

■ In point of error four, CMUD essentially argues that there is a genuine issue of fact as to when it discovered, or should have discovered, its causes of action for negligence, strict liability, fraud and DTPA. The discovery rule, when applicable, tolls the running of the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990).

■ CMUD argues there is a fact question, raised by the affidavits attached to its response, as to when its board had knowledge of system-wide problems instead of an isolated problem affecting only a small portion of the system. Under the discovery rule, however, a duty is imposed on the plaintiff to exercise reasonable diligence to discover the injury. *Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.,* 866 S.W.2d 740, 742 (Tex.App.—Houston [14th Dist.] 1993, writ denied). The discovery rule tolls the statute only until the plaintiff has knowledge of facts which through reasonable diligence would lead to discovery of the injury, rather than discovery of the full extent of the damages. *Id.* at 744; *but see Buffington v. Lewis,* 834 S.W.2d 601, 604–05 (Tex.App.—Houston [1st Dist.] 1992, no writ) (fact question existed as to when plaintiff knew of defects and the extent of its damages). We hold that limitations was not tolled until CMUD knew it had system-wide sewer problems, but rather that it was put on notice to diligently investigate and discover the nature of its injury when it was aware of 60 feet of damaged pipe in February 1987.

We find the following authorities CMUD relies upon inapplicable to these facts. First, in *Dallas Market Center v. Beran & Shelmire,* 865 S.W.2d 145, 147 (Tex.App.—Corpus Christi 1993, writ denied), the court found a fact question existed as to when the hotel owner should have discovered its injury where the initial leaks in the hotel were unrelated to the masonry deterioration for which suit was filed seven years after discovery of leaks. Here, it is not CMUD's position that the initial pipe damage observed in December 1985 or the discovery of further damage in February 1987 is unrelated to the system-wide damage.

Likewise, CMUD is not aided by its reliance on *Ciba–Geigy Corp. v. Stephens,* 871 S.W.2d 317 (Tex.App.—Eastland 1994, writ denied). There, the plaintiff was found not to have been put on notice of his injury when he first noticed damage after using the defendant's fungicide to control "pod rot" in his peanut crop. Because the fungicide was expected to only control, not eliminate, the problem, when plaintiff first observed some damage, he was not charged with notice of his cause of action for the extensive rot that occurred. *Id.* at 321. In this case, the leaks discovered in February 1987 were not expected and therefore should have put CMUD on notice to diligently investigate and timely file suit.

We agree with CMUD, however, that the facts in this case are similar to those in *Tenowich v. Sterling Plumbing Co.,* 712 S.W.2d 188 (Tex.App.—Houston [14th Dist.] 1986, no writ). There, the two-year statute of limitations applicable under the DTPA began to run in August when purchasers of a house discovered multiple leaks in pipes and were alerted to a serious plumbing problem, even though it was not until September, after removal of all of the sheet rock, that a claims adjuster examined the pipes and informed them of the extent of the damage. The purchasers had initially discovered a pipe leak in July, but we determined limitations began in August, on the date they encountered another leak in the same pipe and then discovered there were actually five leaks in the pipe. *Id.* at 189–90. As here, limitations did not begin when the first damage was observed, or when the full extent of the damage was known, but rather when they "knew or should have known of the facts giving rise to their cause of action." *Id.* at 190. The fact that a party may not immediately be able to determine the total amount of damages it may suffer does not toll the statute of limitations. *Johnson v. Walker,*

824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, writ denied).

In another similarly decided case, limitations began when plaintiffs first noticed cracks in the sheetrock and bricks pulling loose, even though they did not hire an expert to investigate the foundation problems and file suit until over five years later. *Polk Terrace, Inc. v. Curtis,* 422 S.W.2d 603, 604–05 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). The Dallas court held that the cause of action could have been discovered by the exercise of reasonable diligence more than two years before suit was filed; therefore, it was barred by limitations. *Id.* at 605.

CMUD attempts to distinguish this court's opinion in *Bayou Bend.* In contrast to the homeowners in *Bayou Bend,* CMUD claims it diligently performed its duty to investigate the damage, determine the cause and parties responsible, and file suit less than two years later. TCB's own engineer, Michael Miller, testified by deposition that he did not know what caused the hole in the pipe first observed in February 1987, and he did not know until he viewed the more extensive videotape of the line in July 1987 that there was a system-wide failure. In his affidavit, William St. John, an engineer and board member, asserted that when the board was aware of the 60 feet of cracked pipe in March through May 1987, it had no reason to believe there was a problem related to the design, engineering, manufacture or construction of the system. He claimed it was not until more extensive videotaping was completed in July that the board was aware of facts giving rise to its causes of action.[3]

We disagree, and find CMUD did not exercise reasonable diligence. While CMUD may contend it was not aware of the extent of the problem until July, it knew sufficient facts to begin the running of the statute in February though May when the board had numerous discussions about filing suit, statutes of limitations, potential defendants, damages recoverable, and retaining evidence. CMUD's board began discussing suit when they were aware of the damage in February 1987, but

chose not to file for over two years. Limitations ran because CMUD failed to diligently investigate and prosecute its claim. We overrule point of error four.

## BREACH OF WARRANTY

In point seven, CMUD contends Armco and Monsanto failed to establish as a matter of law when its causes of action for breach of warranty accrued. Absent establishment of a beginning point, CMUD argues appellees failed their burden to prove limitations had run.

 Breach of an express warranty accrues from the date of delivery. Tex.Bus. & Com.Code Ann. § 2.725 (Vernon 1968); *American Alloy Steel, Inc. v. Armco, Inc.,* 777 S.W.2d 173, 176 (Tex.App.—Houston [14th Dist.] 1984, no writ). An express warranty can only be extended if there is a specific provision covering future performance. *American Alloy,* 777 S.W.2d at 176. Limitations on implied warranties begins when goods are sold. *Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 546 (Tex. 1986). Implied warranties cannot be extended. *Id.* at 547–48.

Appellees provided proof that construction was completed in 1984, so the sale and delivery necessarily had to have taken place before that date. There was no future performance contemplated to extend the limitations period. CMUD's breach of warranty action on the sale of the pipe was therefore barred after 1988. We overrule point of error seven.

## SUMMARY JUDGMENT PROOF

 In point six, CMUD argues the trial court erred in overruling its objections to appellees' summary judgment proof. Its objections to the lack of proper authentication for the deposition excerpts is controlled by *McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994), holding that this authentication is no longer required. Its objections to the board minutes as not being properly authenticated as a business record were

---

**3.** Because of our disposition of this appeal, we need not address appellees' objections to this

affidavit as improper summary judgment proof.

properly overruled because the parties had stipulated in writing that the minutes did not have to be "proved up." It also objected to the certificates of completion as hearsay because they were not properly authenticated. These certificates, in the form of letters to CMUD, were supported by an affidavit from their author, Michael B. Hunn, an engineer with TCB. Copies of original documents are acceptable summary judgment proof if accompanied by a sworn affidavit that they are "true and correct." *Republic National Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986). We overrule point of error six.

## CONCLUSION

In summary, we conclude limitations began in February 1987 when CMUD discovered additional cracks in the pipes. It had two years after that discovery to investigate its damages and the parties responsible before filing suit, and it failed to do so. CMUD discussed litigation with its attorney during this time period, but it did not diligently pursue its claim. We affirm the trial court's grant of summary judgment.

DRAUGHN, J., dissents without an opinion.