**William P. TEICH, Appellant,**

v.

**Alfred HABY, Appellee.**

No. 14468.

Court of Civil Appeals of Texas.

San Antonio.

July 27, 1966.

Rehearing Denied Nov. 23, 1966.

Briscoe & Corley, Devine, for appellant.

Anne E. Davis, Hondo, for appellee.

CADENA, Justice.

This is a case in which William P. Teich, plaintiff, failed in his effort to enjoin defendant, Alfred Haby, from going across plaintiff's land. The trial court's refusal to enjoin was based on a finding that defendant had an easement of way by implied grant over the land of plaintiff.

The lands in question were a part of what is described as Survey No. 402, G.C. & S.F. Ry., Medina County, which was originally patented in 1918 to Leopold Haby and conveyed by him in 1919 to four of his children, Robert, Arnold, Olga and Louise, who owned the land in common until January 20, 1927, when two instruments relating to such land were executed. By one of these instruments, Arnold, Olga and Louise conveyed to Robert their interest in 384 acres of Survey No. 402. This tract, hereinafter referred to as the "western tract," was bounded on the west by a public road. The other instrument was a conveyance, executed by Robert, Arnold, Olga and Louise, of 255 acres out of Survey No. 402 to Titus Haby. The tract thus conveyed to Titus will be referred to herein as the "eastern tract."

In 1927 there existed a roadway leading from the public highway, across the western tract to the eastern tract.

A partition fence was built between the western and eastern tracts, with a gap or gate at the point where the roadway entered the eastern tract, and Titus Haby used such roadway as a means of traveling from the highway to the eastern tract.

On September 15, 1960, plaintiff acquired title to approximately 152.5 acres out of the western tract. The roadway referred to in the preceding paragraph, leading from the public highway to the eastern tract, was located, at least in 1927 and for some years thereafter, on a portion of the land now owned by plaintiff. Defendant acquired title to the eastern tract on January 30, 1962.

Defendant claims an easement of way, corresponding to such roadway, was created by implication as a result of the conveyance of the eastern tract to Titus Haby in 1927.

■ Plaintiff contends that the trial court erred in applying to the facts of this case the "rules" relating to easements by implied grant, because any implied easement which might have been created over what is now plaintiff's land on January 20, 1927, could have come into existence only by implied reservation. Plaintiff's contention is based on the argument that, since the instrument conveying the western tract to Robert is recorded on page 33 of Vol. 83 of the Deed Records of Medina County, while the instrument conveying the eastern tract to Titus is recorded on page 125 of such volume, it must be presumed that the deed of the western tract to Robert was delivered and became effective as a conveyance before the deed of the eastern tract to Titus became effective by delivery. Plaintiff then argues that the easement over the western tract, if it arose at all, would necessarily be for the benefit of the eastern tract, title to which was still retained by Arnold, Olga and Louise, grantors in the conveyance of the western tract. Since the claimed easement would be for the benefit of the land retained by grantors, the conclusion is that the easement must be based on implied reservation, rather than implied grant.

Plaintiff's contention is based on the theory that the easement in question arose as a result of the conveyance of the western tract to Robert by Arnold, Olga and Louise. It must be noted that, even if we assume such conveyance took effect before the conveyance to Titus, its only result was to give to Robert ownership of the complete interest in the western tract. It did not deprive Robert of his interest in the eastern tract. Therefore, when Robert joined in the conveyance of the eastern tract to Titus, Robert was conveying his interest in only a portion of the land owned by him, and the claimed easement is sought to be established over land retained by Robert. That is, the alleged easement, if it arose at all, arose by implication out of the conveyance to Titus of Robert's interest in a portion of the land owned by Robert, and not out of the conveyance to Robert of the western tract by his cotenants, Arnold, Olga and Louise.

The judgment of the trial court is next challenged on the theory that, even if it be assumed that an easement by implied grant of January 20, 1927, defendant cannot assert any rights thereunder as against plaintiff, who purchased the alleged servient tenement in 1960 without notice of the existence of the claimed easement.

Defendant concedes that if, in fact, plaintiff purchased the alleged servient land in 1960 without notice of the existence of the easement in favor of defendant's land, plaintiff took his land free of such encumbrance. In view of this concession by defendant, we do not consider the interesting problem of whether a bona fide purchaser does in fact take the land free of an easement which arose by implied grant in connection with a conveyance evidenced by a recorded instrument. See Anno: 174 A.L.R. 1241 (1948).

Much of plaintiff's brief is devoted to an attempt to show that the evidence is insufficient to establish that in 1960, when plaintiff acquired title to the claimed servient land, the alleged use of such land for the benefit of defendant's land was not "apparent, continuous and necessary." This argument is based on language, such as that found in Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.1962), setting forth the conditions which must exist at the time of the severance of the alleged dominant and servient lands, before an easement can be *created* by implication. However, the critical question relating to plaintiff's claim as a bona fide purchaser is not whether, at the time plaintiff purchased in 1960, the conditions necessary to the creation of an easement by implication existed, but whether, at the time plaintiff purchased, he had knowledge of facts sufficient to charge him with notice of the existence of the easement which had been created in 1927.

The only question we need consider is whether, at the time of plaintiff's purchase, there existed on the alleged servient land signs of the easement which reasonably suggested its existence.

Plaintiff testified that, prior to purchasing the property in 1960, he inspected the land and found no signs of any road leading from the public highway to defendant's land. Several of plaintiff's witnesses testified that, while they noticed the gap or gate in the partition fence between plaintiff's land and the land of defendant, they did not recall seeing any roads, and that the gap in question was rusty and did not appear to have been used recently.

However, one of plaintiff's witnesses testified that when plaintiff built a fence along the public road which bounded his land on the west, he "took the line of least resistance" and placed the gate on "one of the old farm roads which led all the way in." Plaintiff's witness, Boskind, testified that plaintiff, at first, used part of an existing road to get from the high-

way to his house, but that such road was rough and plaintiff subsequently built a new road, constructing a new gap in his fence at the place where the new road met the public highway.

Defendant testified that from 1927, when his father acquired the eastern tract, until 1962, when such tract was conveyed to defendant, his father used an existing road on what is now plaintiff's land, as a means of getting from the highway to the eastern tract. During this time, both defendant and his father used such road whenever they desired to get to their land. This use of the road, by means of horses, wagons and motor vehicles, continued until 1962, when Teich built his fence along the public highway. Defendant, in October, 1962, at about the time Teich completed his fence, left a note inquiring of Teich where defendant could get a key to the gate so that he could move a cabin onto his land. Plaintiff furnished a key to defendant, but subsequently changed the lock on the gate. Defendant then left a note asking plaintiff if the lock had been changed, since the key which defendant had would not work. The note concluded with the request that plaintiff let defendant "know what the trouble is." This note produced no results, and subsequently, defendant apparently broke the gate.

Defendant also testified that when plaintiff built his new fence he placed the gate in the existing roadway. Defendant's brother, Walter Haby, also testified to the existence of the old road, leading from the gap in plaintiff's fence and following a clearing on plaintiff's land to defendant's pasture.

Plaintiff's witness, Boskind, also testified that there was a road leading from plaintiff's house eastward to the fence dividing plaintiff's land from that of defendant. He had never followed this road to defendant's land because, at the time he saw it, there was a tree across the road.

■ The testimony in the record is sufficient, if believed, to support the finding

that at the time plaintiff purchased his land there were visible signs on the ground sufficient to put plaintiff on inquiry. Under these circumstances, we cannot hold that the court erred in holding that plaintiff was not a bona fide purchaser.

The evidence shows that, in addition to the 255 acres which was a part of Survey No. 402, defendant owns in excess of 500 acres which is north of and contiguous to the 255 acres in question. This additional land of defendant borders, on the extreme north, on a public highway. Defendant and his brother both testified that there is no road leading from this public highway to the lower part of defendant's land. Their testimony is to the effect that the land lying between this northern road and the lower pasture is very rough, consisting of box canyons, high hills and steep cliffs, making it impossible to get from the north road to the 255-acre tract except on horse or by foot. The distance from the north road to the alleged dominant land is three miles.

■ Plaintiff, relying on cases dealing with rights-of-way by necessity, contends that since other portions of defendant's land border on a public road, the case reflects an absence of the "necessity" which is an essential element for the finding of an easement. However, defendant does not here claim an easement by necessity. In cases involving easements by implied grant, it is sufficient if the easement in question was reasonably necessary to the enjoyment of the land conveyed. Even if the evidence showed that defendant could, at some expense, construct a road from the lower half of his land, across the remainder of his land, to the north highway, the evidence here shows a "sufficient necessity" to support the easement. Drye v. Eagle Rock Ranch, Inc. supra; Howell v. Estes, 71 Tex. 690, 12 S.W. 62 (1888); Hoak v. Ferguson, Tex.Civ.App., 255 S.W.2d 258, wr. ref. n. r. e.

The judgment of the trial court is affirmed.