**Robert Louis PLAGGE, d/b/a Quail Valley Stables, Appellant,**

v.

**Sal GAMBINO et al., Appellees.**

**No. 17194.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 20, 1978.

Dale W. Felton, Houston, for appellant.

Kronzer, Abraham & Watkins, Robert E. Ballard, Douglass F. Norman, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from an order denying a temporary injunction. Findings of fact and conclusions of law have been filed. The appellant contends the trial court abused its discretion in failing to apply the law correctly to the undisputed facts. The judgment is affirmed.

On September 1, 1977, Robert Louis Plagge leased a portion of the property known as Quail Valley Stables from a partnership comprised of James McNaughton, Stanley W. Cameron and Thomas H. Overstreet, hereinafter called McNaughton partnership.

On October 31, 1977, the McNaughton partnership deeded a portion of the property to Quail Valley Car Care Center, Inc. The property conveyed contained 1.9 acres. A barn was located on this part of the property which formerly was used for indoor riding. An improved driveway or road led from the highway through the 1.9 acre tract alongside the front barn to the back barn. The appellees subsequently blocked the driveway or road when its contractor installed certain gasoline tanks in connection with the construction of a car care center.

While the property leased by Plagge had some 400 feet frontage on the highway, there was no other improved road or driveway leading into the interior of the property or to the back barn where horses were stabled. Plagge contends that he owns an implied easement over the road as it existed at the time he entered into his lease agreement and sought an injunction to prevent the car care center from blocking the roadway. There is evidence that Plagge has been damaged and will continue to be damaged by reason of the obstruction to the use of the roadway. There is also evidence that the issuance of an injunction would result in damage to appellee.

In a hearing on an application for a temporary injunction the question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. Where the applicant properly proves a case showing probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. *Transport Company of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953). The trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts. *Southland Life Insurance Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722 (1935).

The rule of law which the appellant asserts grants him the right to use the road in question is stated in *Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163 (1952), in these words:

"It is universally recognized that where the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created—not only in favor of the parcel granted ('implied grant') but also in favor of the one remaining in the ownership of the grantor ('implied reservation'). The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration. . . .

"On the other hand, even in the case of an implied grant, courts do not lightly hold the grantor to convey more than stated in his deed; and he being less favored in law than his grantee, the weight of authority seems still more reluctant to imply a reservation in his favor at the expense of his grantee . . ."

The question of implied grants of easements was considered at length in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962), where the court said:

"If an owner used one part of his land for the benefit of another portion of his own land, the portion served had a 'quasi-dominant tenement.' The portion which was used was subject to a 'quasi-servient tenement.' The doctrine of implied easement appurtenant developed when the owner, under those circumstances, sold the portion of his land which had had the use of the other portion—as for drainage, support, way, or water. If use of the 'servient' tract was apparent, continuous, and necessary to the use of the 'dominant' land sold, the courts presumed that the necessary use of the 'servient' tract passed by implication to the purchaser."

In *Drye v. Eagle Rock Ranch, Inc.*, supra, the court found it unnecessary to decide whether the doctrine of "strict necessity" for an implied reservation applies also to the implied grants of easements appurtenant. The court did state that in the great majority of cases in which easements have been implied, the necessity has been economic or physical necessity for the use of the land rather than some merely desirable right for the occupant of the land. In support of this statement the court cited *Howell v. Estes*, 71 Tex. 690, 12 S.W. 62 (1888); *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669 (1959). *Ulbricht v. Friedsam*, supra, states as the correct rule of law governing an implied grant of an easement a quotation from 28 C.J.S. Easements § 31, p. 687, et seq., as follows:

" 'Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.' "

Two questions immediately appear when these propositions of law are applied to the facts of this case. First, do the facts show that the road in question is necessary" to the "reasonable enjoyment" of the property granted; second, is the conveyance of an interest in the land by means of a written lease for term of years a sufficient severance of title to support the creation of an easement by implication? The Texas cases which we have considered all use such words as "grantor and grantee", "convey", "sell", and "purchaser." No Texas cases have been found holding that the grant of an easement of use could be implied from a lease agreement. However, in *Adams v. Grapotte*, 69 S.W.2d 460 (Tex.Civ.App.— Eastland 1934), aff'd and opinion adopted in *Grapotte v. Adams*, 130 Tex. 587, 111 S.W.2d 690 (1938), the statement is made that access to a public highway is an incident to the ownership of land abutting thereon, and the right to such access is private property passing to the lessee.

As early as 1909 the Supreme Court of Pennsylvania had stated that where land is sold or leased and is so situated that access to it from the highway cannot be had except by passing over other land of the grantor or lessor, the grantee or lessee becomes entitled to a right to pass over the land of his grantor or lessor for the purpose of reaching the highway and returning to his own land. *Commonwealth v. Burford*, 225 Pa. 93, 73 A. 1064 (1909).

It is a settled rule in Massachusetts that, when a landlord lets property to be occupied by several tenants, although he retains for certain purposes control of the common doorways, passageways, stairways and the like, he grants to his tenants a right of way in the nature of an easement, appurtenant to the premises let, through those places that afford access thereto. *Commonwealth v. Richardson*, 313 Mass. 632, 48 N.E.2d 678 (1943). Other cases having similar holdings may be found in 49 Am.Jur.2d, Landlord & Tenant, § 198, p. 220.

■ We consider, therefore, that a written lease agreement for a term of years creates a sufficient separation of title to support an implied easement appurtenant.

■ Whether an easement arises by implication depends upon such matters as the extended character of the user, the nature of the property, the relation of the separated parts to each other, the existing degree of necessity for giving such construction to the conveyance as will give effect to what may be supposed to have been, considering the manner of use, the reasonable intention of the parties. 25 Am.Jur.2d, Easements and Licenses, § 28, p. 442.

The evidence is uncontroverted that at the time the lease agreement was made between Plagge and the McNaughton partnership the road was clearly visible and had been in use for a considerable period of time. The premises were used for boarding horses and for conducting a riding academy. The lower barn was used to stable the horses which were frequently brought in and removed in horse trailers by use of this road. The evidence is that the land abutting on the highway was gumbo and was difficult to traverse in a motor vehicle during wet weather. There was no evidence of an agreement or understanding at or prior to the lease that the easement was not to pass. There is testimony that Plagge knew that the front barn and adjacent land was to be sold before the lease was executed. There is no evidence concerning the cost of constructing a new road or driveway from the highway to the back barn. A question of fact was raised as to whether the use of the road was reasonably necessary for the fair enjoyment of the leasehold. *Miles v. Bodenheim*, 193 S.W. 693 (Tex.Civ.App.— Texarkana 1917, writ ref'd); *Westbrook v. Wright*, 477 S.W.2d 663 (Tex.Civ.App.— Houston [14th Dist.] 1972, no writ hist.).

We find no evidence sufficient to warrant the implication of an easement by reservation in favor of the McNaughton partnership at the time of the sale to Quail Valley Car Care Center. The evidence does not establish the strict necessity required for the implication of an easement since there is access from the highway to all of the property retained by the partnership.

One who purchases real estate with knowledge that it is burdened with an easement in favor of other property takes subject to such easement. *Plaster v. Stutzman*, 8 S.W.2d 750 (Tex.Civ.App.—Galveston 1928, no writ hist.). There is evidence that the McNaughton partnership operated a riding stable business on the property involved here. Plagge was employed by McNaughton from April 15, 1976 to September 1, 1977, first as a director of riding and later as manager. Before August 15, 1977 McNaughton gave Plagge notice of his intention to sell the front barn and told him to stop using the barn by August 15, 1977. Plagge took possession on or about September 1, 1977. A formal lease agreement was executed October 25, 1977. There is no evidence that the lease agreement was recorded.

Mr. Gambino, who conducted negotiations for the car care center, testified that he was acquainted with the property prior to the time he purchased it for the car care center. He knew that a business was being operated on the premises. He saw the road in question and knew that it was the only one leading into the premises. He did not ask McNaughton whether there was an easement or right of way for the road. He knew that Mr. McNaughton was a member of a partnership. He did not know that the partnership did business as Quail Valley Stables.

Mr. Gambino knew before he bought the property that the building which he purchased was used as an indoor arena for horse riding. He also knew that McNaughton owned the land north and south of his property line and that there was access to the highway from that land. If it is assumed that an implied easement for use of the road flows from the lease, the facts are not such as to require a finding that the car care center had notice of this easement. Gambino had neither actual knowledge nor notice of the lease agreement and he might reasonably have assumed that the McNaughton partnership operated the riding stable as well as the indoor arena. A disputed issue of fact exists.

The trial court did not fail to apply established rules of law to undisputed facts. There is no abuse of discretion in the action of the trial court in failing to grant the temporary injunction. The judgment is affirmed.