**Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring and Dissenting Opinions filed December 29, 2011.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00560-CV

## DAVID HAMRICK, MAGGIE HAMRICK, SUE BERTRAM, AND STEVE BERTRAM, Appellants/Cross-Appellees

### V.

## TOM WARD AND BETSEY WARD, Appellees/Cross-Appellants

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2005-61600**

## OPINION

This case involves cross-appeals from the trial court's grant of summary judgment favoring appellees/cross-appellants Tom and Betsey Ward. The trial court held that the Wards had an easement across the property of appellants/cross-appellees, David and Maggie Hamrick and Sue and Steve Bertram ("appellants").[1] In their appeal, appellants challenge the trial court's easement finding and its rejection of their various affirmative

---

[1] The Wards nonsuited their third-party claims against William L. Cook, Jr., and no issues concerning those claims are raised in this appeal.

defenses. In their cross-appeal, the Wards contend that the trial court did not issue a final and appealable judgment and erred in (1) failing to designate a width for the easement, (2) failing to adjudicate disposition of the Wards' injunction bond, and (3) awarding attorney's fees to appellants. We affirm in part and reverse and remand in part.

## I. Background

Appellants originally filed suit against the Wards seeking injunctive relief to prevent the Wards from using a dirt roadway running along the edge of appellants' two lots to a two-acre tract owned by the Wards. At the time, construction equipment was being moved along the dirt road to build a home on the Wards' tract. The dirt road is fenced off from the remainder of appellants' lots. The Wards subsequently filed a counterclaim seeking declaratory judgment that they owned an easement across appellants' property for access to their two-acre tract.

The easement in question was allegedly established in 1953 when Paul L. Bourgeois deeded a two-acre portion of a 41.1-acre tract to Alvin and Cora Bourgeois. At that time, the dirt road was the only means of accessing the two-acre tract from a public thoroughfare, Richardson Road.[2]

In 1957, the two-acre tract was conveyed to Henry Gomez, who lived on it with his wife Anna Bell. After Henry died,[3] Mrs. Gomez became the sole owner of the property until she sold it to the Wards in February 2004. After the sale, she continued to live on the property under a life tenancy. In 2005, the Wards began constructing a home for themselves on the tract.

In the late 1990s, real estate developer William L. Cook, Jr. purchased other portions of the original 41.1-acre tract owned by Paul Bourgeois, including the tracts now

---

[2] Evidence in the record suggests that the roadway was at one time 25 feet wide, whereas the currently fenced area is only 15 feet wide.

[3] Henry's will, under which Mrs. Gomez became sole owner of the property, was admitted to probate on May 22, 1990 according to the Wards' deed.

owned by appellants. Cook began developing the land into the Barrington Woods Subdivision. At one point, a representative of Cook's informed Mrs. Gomez that they were intending to close off the dirt road access to her property. In exchange, they offered to provide her with access to a newly-constructed public thoroughfare that terminated at her property line, Barrington Gardens Street. However, apparently because her property had not been platted, Harris County required a one-foot reserve and a physical barricade be erected between the street and Mrs. Gomez's property, thus preventing Mrs. Gomez from accessing Barrington Gardens Street from the two-acre tract.

Cook drafted a "special restriction" for the Barrington Woods Subdivision and filed it as an appendix to the subdivision's deed restrictions. This document, signed only by Cook, stated that Mrs. Gomez had an "access easement" along the dirt road, permitting access to her property from Richardson Road. According to the special restriction, Mrs. Gomez was permitted to use a fifteen-foot-wide strip for herself, "her family and social guests." Her use was further limited to "domestic, not-for-hire, passenger and utility service vehicles of less than 6,200 pounds total weight."

After appellants filed their application for injunctive relief, the Wards counter-claimed, seeking to establish their right to an easement across appellants' two lots. The trial court granted a temporary injunction against the Wards in April 2006. The parties filed a number of motions for summary judgment. The trial court ruled that the Wards had established an easement by implied grant, the elements of which are (1) unity of ownership between the dominant (the Wards' property) and servient (appellants' property) estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by grant with the dominant estate; and (4) reasonable necessity of the easement to the use and enjoyment of the dominant estate. *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966). As will be discussed in detail below, the court also denied appellants'

3

motion for summary judgment based on their affirmative defenses. The trial court further awarded attorney's fees of $215,000 to the Wards and $200,000 to appellants.

In their appeal, the Wards initially contend that the trial court's judgment is interlocutory, and thus, we do not have jurisdiction to consider the cross-appeals. Appellants contend that the trial court erred in granting summary judgment because (1) there is no evidence of beneficial use prior to severance; (2) the Wards failed to prove the continuing necessity of the easement; (3) appellants were bona fide purchasers without notice who thus took the property free from the unrecorded easement; (4) the Wards are estopped from asserting the easement because they expressly adopted inconsistent rights; and (5) the Wards' predecessor in interest, Mrs. Gomez, waived any right to the easement. In the remainder of their appeal, the Wards argue that the trial court erred in (1) failing to specify the width of the easement awarded; (2) failing to adjudicate disposition of the Wards' injunction bond; and (3) awarding attorney's fees to appellants.

## II. Finality

In the first issue in their appeal, the Wards contend that the trial court's judgment is not final and thus we do not have jurisdiction to consider the cross-appeals. The Wards base their assertion on the fact that the court never expressly addressed certain issues.

The question of the finality of a judgment, however, is not answered by determining whether a trial court expressly addressed all of the issues or claims raised in the case. A judgment is considered final for purposes of appeal if it disposes of all parties and claims in the case, except as necessary to carry out the decree. *Lehmann v. Har–Con, Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). The language of an order or judgment will make it final—even if arguably it should have been interlocutory—provided the language unequivocally expresses an intent to finally dispose of all claims and all parties in the case. *Id*. If such an intent is clearly expressed, then the order or judgment is final and appealable, "even though the record does not provide an adequate basis for rendition of a final judgment." *Id*.

4

The order issued by the trial court on May 25, 2010 contains language indicating that it was intended to be a final judgment: "All relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable." Consequently, the May 25 order is final and appealable. We overrule the Wards' first issue.

## III. Appellants' Appeal

As mentioned, the trial court held that the Wards owned an easement by implied grant across appellants' two parcels of land. In their appeal, appellants challenge the trial court's grant of summary judgment favoring the Wards, both by challenging the evidence on certain elements required for establishing such an easement and by asserting that at least a fact question exists on certain affirmative defenses appellants raised below. We conclude that the trial court did not err in holding that the Wards conclusively proved the elements required for establishing an easement or in holding that appellants failed to establish their affirmative defenses as a matter of law. We also conclude, however, that appellants presented a material issue of fact on one of their affirmative defenses.

### A. Summary Judgment Standards

Although the parties filed multiple motions for summary judgment, responses, and replies, making both no-evidence and traditional arguments for summary judgment, only traditional grounds are at issue in this appeal. In proceedings on a traditional motion for summary judgment, the movant has the burden to show that there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). If the movant satisfies this requirement, the burden shifts to the non-movant to raise a fact issue sufficient to defeat summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In determining whether a fact issue exists precluding summary judgment, evidence favorable to the non-movant is taken as true, and all reasonable inferences are carried in

the non-movant's favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). We must affirm a summary judgment if any ground in the motion that would support the judgment is meritorious. *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009).

## B. Implied Easements

Implied easements are an exception to the rule that easements appurtenant to land must generally be created or transferred in writing. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex. 1963). Put succinctly, the circumstances surrounding an owner's conveyance of part of a previously unified tract of land may create an easement benefitting one parcel and burdening the other parcel. *See Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952); *Seber v. Union Pacific R.R. Co.*, 350 S.W.3d 640, 647-48 (Tex. App.—Houston [14th Dist.] 2011, no pet. h.). If an implied easement benefits the parcel granted, it is called an "implied grant." If the easement benefits the parcel retained, it is called an "implied reservation." *Mitchell*, 246 S.W.2d at 167; *Seber*, 350 S.W.3d at 647-48. "The . . . law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *Mitchell*, 246 S.W.2d at 167.

The circumstances creating implied easements may demonstrate either necessity or prior use of land. An easement by necessity may be created when the conveyed or retained parcel cannot be accessed except by traveling over the remaining tract of land. *See Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984). An easement by necessity has three requirements: (1) unity of ownership of both parcels must exist prior to separation; (2) access across the servient parcel is necessary and not a mere convenience; and (3) such necessity must exist at the time of severance. *Id*.

A party claiming an easement based on prior use must prove that at the time of severance (1) both parcels were under unified ownership; (2) the use was apparent; (3)

6

the use was continuous; and (4) the use was necessary to the use of the dominant estate. *Bickler*, 403 S.W.2d at 357; *Seber*, 350 S.W.3d at 648.[4] Easements by implied grant based on prior use require "reasonable necessity" only and not "strict necessity," meaning the person claiming such easement must demonstrate that it was reasonably necessary to the use and enjoyment of the property which it serves. *See Seber*, 350 S.W.3d at 649.

Texas courts commonly refer to easements implied by necessity as "easements by necessity" and easements implied by prior use simply as "implied easements." *See State v. Beeson*, 232 S.W.3d 265, 273 n.7 (Tex. App.—Eastland 2007, pet. dism'd) (noting that the plaintiffs' assertion of an implied easement was raised under theory of easement by necessity and was not governed by standards for "implied easement" based on prior use characteristics); *Mack v. Landry*, 22 S.W.3d 524, 530 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (distinguishing between "easement by necessity" related to inaccessible tract of land and "implied easement" based on prior use characteristics).

### C.  Challenges to Elements

Although the Wards alleged various forms of easement rights in successive pleadings, it is clear that ultimately they requested, and the trial court granted, an easement by implied grant based on prior use.  In their first two issues, appellants challenge elements of the Wards' claim, specifically the elements of necessity and prior use.

---

[4] The Texas Supreme Court has explained that easements based on prior use are created as follows:

> If an owner used one part of his land for the benefit of another portion of his own land, the portion served had a 'quasi-dominant tenement' [and] [t]he portion which was used was subject to a 'quasi-servient tenement.' . . .  [W]hen the owner, under those circumstances, sold the portion of his land which had [made] use of the other portion — as for drainage, support, way, or water [— and that use was] apparent, continuous, and necessary to the use of the 'dominant' land sold, the courts presumed that the necessary use of the 'servient' tract passed by implication to the purchaser.

*Drye*, 364 S.W.2d at 207.

## 1. Necessity

In their second issue, appellants contend that the trial court erred in granting summary judgment to the Wards because the Wards failed to conclusively establish the element of "necessity." The parties initially disagree as to whether the necessity element must be assessed just at the time of severance, as claimed by the Wards, or both at the time of severance and in the present time, or "continuing necessity," as claimed by appellants.

We recently addressed this very question in *Seber*, 350 S.W.3d at 649-50. In that case, we concluded that requiring a showing of continuing necessity would contradict the very elements of an easement by prior use, which look only to the circumstances at the time of severance. *Id*. at 649-50; *see also Vinson v. Brown*, 80 S.W.3d 221, 228-29 (Tex. App.—Austin 2002, no pet.) (stating the elements of easement by prior use and examining the record for evidence of necessity only at the time of severance); *Westbrook v. Wright*, 477 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1972, no writ) ("Whether these requirements are met is to be determined at the time the grantor, the one imposing the quasi easement on one portion of his property for the benefit of another portion, conveys away the dominant tenement, that portion benefitted, and retains the servient tenement."); *Fender v. Schaded*, 420 S.W.2d 468, 471-73 (Tex. App.—Tyler 1967, writ ref'd n.r.e.) ("The degree of 'necessity' required to establish an easement by implied grant is merely such as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made.").[5]

Among the cases emphasized by appellants are *Bickler*, 403 S.W.2d 354, and *Miller v. Elliott*, 94 S.W.3d 38, 43-44 (Tex. App.—Tyler 2002, pet. denied). In holding that an easement based on prior use was established in *Bickler*, the Texas Supreme Court noted that necessity existed at the time of severance and, in fact, still existed at the time

---

[5]*See Seber*, 350 S.W.3d at 649 ("We have not identified and the parties do not cite any Texas authority applying this 'continued necessity' rule to an otherwise valid implied easement by prior use").

8

of the lawsuit. 403 S.W.2d at 359. However, the court's reference to the fact of contemporaneous necessity appears to be only for the purpose of emphasizing the strength of the evidence regarding necessity at the time of severance. There is no indication in the opinion that the court considers continuing necessity to be an element of easements based on prior use.

In *Miller*, the Tyler court addressed claims of both easement based on prior use and easement by necessity, and in doing so, it to some degree co-mingled its analysis of those two types of easement. 94 S.W.3d at 43-44. The court, however, clearly stated that easements *by* necessity terminate upon the cessation of the necessity. *Id.* Thus, this case does not support the notion that continuing necessity is required for easements based on prior use.

In short, appellants' arguments and citations do not convince us to reconsider our position as set forth in *Seber*. Easements based on prior use require necessity at the time of severance and not continuing necessity. *Seber*, 350 S.W.3d at 650. Because appellants' legal position on necessity lacks merit, we need not consider their factual arguments concerning necessity, which are premised on the Wards' alleged failure to demonstrate continuing necessity. Accordingly, we overrule appellants' second issue.

### 2. Beneficial Use at Severance

In their first issue, appellants contend that the Wards failed to establish that at the time of severance in 1953, Paul Bourgeois (owner of the larger tract and grantor of the two-acre tract now owned by the Wards) was using the dirt road to access the two-acre tract. Appellants acknowledge that Calvin Bourgeois, Paul's brother, testified by deposition that the dirt road was being used at the time of severance for the benefit of tracts north of the two-acre property (at least one of which was apparently owned by Paul's parents), but they insist that there is no evidence that Paul was using the road to access or benefit the two-acre tract itself. Appellants further assert that certain

9

photographs raised a fact question as to whether the dirt road was used to access the two-acre tract during the relevant time period.

As described above, to establish an implied easement by prior use, a claimant must show that at the time of severance the use in question was apparent, continuous, and necessary to the use of the dominant estate. *Bickler*, 403 S.W.2d at 357; *Seber*, 350 S.W.3d at 648.

In his deposition, Calvin testified that he was born in 1937 on property at the north end of the dirt road and that the road was in continuous use from 1937 until at least 1981. He said that there was no other way to access the property owned by his family except to travel along the dirt road. He specifically said that the two-acre tract could not have been used without access via the dirt road from 1937 to 1973. He further indicated that use of the road was reasonably necessary for use of the two acres during that time period and that at no point was the road abandoned.

Appellants are correct that Calvin did not succinctly say "Paul used the road to access the tract." However, Calvin did repeatedly indicate that the family (of which he and Paul were both clearly members) used the dirt road to access all the property they owned; indeed, according to Calvin, the only way to access their property, and particularly the two-acre tract, was via the dirt road. Although Calvin's testimony does not go into great detail regarding what the two-acre tract was being used for, his testimony clearly indicates that use of the dirt road was reasonably necessary to the use and enjoyment of the two-acre tract and that such use was continuous and apparent for at least 16 years prior to severance and at the time of severance and beyond. Indeed, he expressly stated so. Calvin's testimony was thus sufficient to establish that the road was in use for the benefit of the two-acre tract at the time of severance.[6]

---

[6] Calvin's testimony was supported to some degree by that of his niece, Shirley Shugart, who testified by deposition that she was familiar with the road from 1953 forward and that the road was in continuous use and was absolutely necessary for the use of the two-acre tract. She further said that Paul

10

Appellants additionally argue that two aerial photographs demonstrate that in 1953, Paul was not using the dirt road to access the two-acre tract. According to appellants, a 1945 photograph of the property shows that the two-acre tract was not then being cultivated; only areas west of the tract were being cultivated. However, even assuming appellant's interpretation of the black-and-white aerial photograph is correct, the mere fact that property was not under cultivation in 1945 is not evidence that it was not being used as family members testified in 1953.

Appellants acknowledge that an aerial photograph from 1955 shows the two-acre tract then being cultivated but argue that an apparent pathway of some sort ran from the two-acres to the back of Paul's barn indicating that access to the two-acre tract was via that pathway and not from the dirt road. However, even assuming the lines on the photograph show a pathway between two parts of the land owned by Paul, as appellants urge, it is not evidence that Paul wasn't using the dirt road to access the two-acres. This is particularly true in light of Calvin Bourgeouis's testimony recounted above that the family used the dirt road to access all of its property and that the dirt road was reasonably necessary to the use and enjoyment of the two-acre tract at the time of severance and for several years before and after severance.

Lastly, appellants maintain that the 1955 photograph shows a "culvert bridging the drainage ditch" that ran alongside the dirt road, allowing access from the dirt road to a house that had been moved to the two-acre tract after severance in 1953. Based on this observation, appellants suggest that if such a bridge or culvert had to be constructed for access after severance, there could have been no access prior to severance. This is not a reasonable inference from the 1955 photograph. Even if the aerial image reveals a small bridge or culvert, it does not provide any information regarding the drainage ditch, such as its width or depth or whether or how easily it could have been crossed prior to construction of the bridge. In his deposition, Calvin Bourgeois stated that there were

must have intended for the grantees of the two-acres in 1953 to use the dirt road because it provided the only access to the tract at the time of severance.

11

drainage ditches on either side of the dirt road, but he also described the dirt road as being fairly flat with the surrounding land, and he indicated that the dirt road provided access to the two-acre tract long before the bridge was built. The aerial photographs do not raise a question of fact regarding use of the dirt road to access the two-acre tract at the time of severance. The summary judgment evidence conclusively established the elements that appellants challenge on appeal; thus, the trial court did not err in holding that the Wards conclusively established those elements.

### D. Affirmative Defenses

In issues three through five, appellants contend that the trial court erred in failing to grant summary judgment in their favor because they conclusively established their affirmative defenses of bona fide purchaser without notice, estoppel, and waiver. In the alternative, appellants contend in these issues that they at least presented a material issue of fact on these affirmative defenses; thus, the trial court erred in granting final judgment favoring the Wards. In response, the Wards initially contend that appellants waived these defenses in the trial court by not timely raising them in response to the Wards' motion for summary judgment on the elements of an implied easement. We will first address the question of waiver and then each of the three affirmative defenses.

### 1. Potential Waiver of Defenses

After initially pleading their three affirmative defenses, appellants filed a motion for summary judgment on their bona fide purchaser defense which was denied by the court before the Wards filed their cross-motion for summary judgment on the elements of an implied easement. When the Wards filed a motion for partial summary judgment, appellants did not raise any affirmative defenses in response, relying instead on their necessity arguments. Only after the trial court granted an interlocutory summary judgment in favor of the Wards did appellants file their motion for summary judgment based on all their affirmative defenses (bona fide purchaser, estoppel, and waiver).

12

We focus here on the question of whether the motions filed by appellants were sufficient to preserve these affirmative defenses for appellate review. In the proceedings below, the parties presented, and the court considered, the summary judgment issues in a discrete fashion, with several motions and cross-motions for summary judgment being filed by each side, leading to several orders by the court. Appellants apparently believed they could file their affirmative-defense motion after the court ruled that the Wards established an implied easement by prior use. The Wards asserted in the trial court and assert on appeal that such pleading was an untimely response to the cross-motion for summary judgment and that, by not raising the defenses in response to the cross-motion, the appellants have waived consideration of the evidence supporting the affirmative defenses.

Appellate courts generally presume that late-filed responses to motions for summary judgment were not considered by the trial court unless the trial court granted leave to file or clearly indicated that it considered the late filing. *See* Tex. R. Civ. P. 166a(c); *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Fertic v. Spencer*, 247 S.W.3d 242, 250-51 (Tex. App.—El Paso 2007, pet. denied). Here, appellants filed a motion for reconsideration of the cross-motion and a motion to clarify the ruling. The court held a status conference before the entry of final judgment. At the status conference, appellants urged the court to consider their motion on their affirmative defenses, and the Wards urged the court to find that the affirmative defenses had been waived because they were not timely raised in response to the Wards' motion. The trial judge stated that he had not considered the affirmative defenses with the Wards' motion and would "take a look at those issues." He also stated that he "would take a look at [the waiver issue] as well." The court subsequently entered its final judgment expressly considering and denying the motion for summary judgment on the affirmative defenses.

13

The court's comments and the text of the final judgment clearly indicate that the trial court considered appellants' evidence on their affirmative defenses; thus, even if it were an untimely response to the Wards motion, the affirmative defenses therein were still preserved for our review. *See, e.g., Adi v. Rapid Bail Bonding Co.*, No. 01-08-00290-CV, 2010 WL 547474, at *3 n.6 (Tex. App.—Houston [1st Dist.] Feb. 18, 2010, no pet.) (mem. op.) (holding trial court considered late-filed response where although there was no order expressly permitting a late response, the order granting summary judgment expressly stated that the trial court considered the response); *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 703 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (considering late-filed affidavit attached to motion for new trial where trial court indicated it had considered same and essentially reaffirmed summary judgment holding).[7]

### 2. Bona Fide Purchaser Without Notice

In their third issue, appellants contend that they took title for fair value, in good faith, and without notice of the easement; thus, they were bona fide purchasers who cannot be held to the easement claimed by the Wards. The parties dispute whether the bona fide purchaser defense may apply to cases involving implied easements based on prior use and whether appellants presented evidence establishing such a defense as a matter of law or at least creating a fact issue precluding final judgment favoring the Wards.

### a. Bona Fide Purchasers and Prior Use Easements

In support of their position that the bona fide purchaser defense is not applicable in implied easement by prior use cases, the Wards cite *Drye v. Eagle Rock Ranch, Inc.*, 364

---

[7] Although not precedential, our holding also comports with our prior opinion in *Miller v. General Motors Corp.*, No. 14-00-00098-CV, 2002 WL 1963493, at *2 & n.2, 3 (Tex. App.—Houston [14th Dist.] Aug. 22, 2002, pet. denied) (holding trial court considered response filed after interlocutory grant of summary judgment where court lined through language in draft order that would have denied respondent's request for reconsideration) (not designated for publication).

S.W.2d 196 (Tex. 1963).[8] In *Drye*, the Texas Supreme Court stated that the bona fide purchaser defense did not apply to easements created by implication because such easements passed with the land and were not equitable in nature. *Id.* at 212. This statement was not essential to any actual holding in *Drye* nor does it appear to have been made deliberately and for future guidance in the conduct of litigation. *Id.*[9] Therefore, we conclude that it is an obiter dictum and therefore not precedential. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Furthermore, *Drye* does not cite any authority in support of this statement, and we have found no case citing *Drye* for this proposition. 364 S.W.2d at 212.

The Texas courts of appeals cases touching on this issue are few and far between. Three of the more relevant cases are *Plagge v. Gambino*, 570 S.W.2d 106 (Tex. Civ. App. —Houston [1st Dist.] 1978, no writ), *Fender v. Schaded*, 420 S.W.2d 468 (Tex. App.—Tyler 1967, writ ref'd n.r.e.), and *Pokorny v. Yudin*, 188 S.W.2d 185 (Tex. App.—El Paso 1945, no writ.). In *Plagge*, the First Court held that the trial court did not err in refusing to grant a temporary injunction in part because there was a disputed issue of fact as to whether a purchaser of real property had notice of an implied easement across that property. 570 S.W.2d at 110. In *Fender*, the Austin Court rejected a bona fide purchaser defense because there was evidence supporting the trial court's finding that at the time of purchase, the implied easement over the property was "open and visible." 420 S.W.2d at 473-74. In *Pokorny*, the El Paso Court upheld a judgment

---

[8] The Wards also assert that the bona fide purchaser defense applies only to title disputes, citing *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001), and *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.). However, while both of these cases note that the bona fide purchaser status is a potential defense in a title dispute, neither specifically limits the scope of the defense to that context. *Madison*, 39 S.W.3d at 606; *Fletcher*, 217 S.W.3d at 758.

[9] After rejecting claims for implied easement and easement by estoppel, the court in *Drye* addressed an alternative claim for breach of contract damages against the seller based on a lack of notice. 364 S.W.2d at 212. In doing so, the court stated: "Of course, this action is not directed . . . to easements created by implication since these rights . . . would not have been equitable in nature or subject to being cut off by a bona fide purchaser of legal title." *Id.* The court proceeded to reject the substance of the alternative claim. *Id.* at 213.

15

confirming an implied easement based in part on the trial court's finding that the owners of the servient estates purchased with notice and thus were not bona fide purchasers without notice. 188 S.W.2d 193-94.[10] In other cases, courts of appeals have essentially assumed without deciding that the bona fide purchaser defense can apply in the implied easement context. *See, e.g., Teich v. Haby*, 408 S.W.2d 562, 564 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e) (noting application of bona fide purchaser defense in implied easement context is an "interesting problem" but not addressing it because the purported easement owner conceded its application in the case at hand); *Hoak v. Ferguson*, 255 S.W.2d 258, 261 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e) (stating evidence supported finding that appellant had notice of implied easement at time of purchase, but it is unclear what role this finding played in the case's outcome).[11]

Here, we are faced squarely with deciding whether the bona fide purchaser defense may be used to defeat an implied easement by grant based on prior use. For the following reasons, we hold that the defense may so apply. First, our holding is consistent with those prior cases from other courts of appeal discussed above. Second, our holding is in agreement with the majority rule in the United States. *See, e.g.*, 28A C.J.S. *Easements* § 137 (2011); 25 Am. Jur. 2d *Easements and Licenses* § 93 (2011). Third, there are policy considerations that support our holding. Our holding protects innocent purchasers who have taken property for value and without notice of an easement. *See generally Patty v. Middleton*, 82 Tex. 586, 17 S.W. 909, 911 (Tex. 1891) (explaining that protection is generally given to bona fide purchasers because it would be unjust to deprive them of property bought from another holding all the evidence of ownership); *City of Edinburgh v. A.P.I. Pipe & Supply, LLC*, 328 S.W.3d 82, 91 (Tex. App.—Corpus Christi 2010, pet. filed) (quoting *Patty*). Our holding may also serve to eliminate

---

[10] It is not entirely clear in *Pokorny* whether the easement in question was one by necessity or one based on prior use. 188 S.W.2d at 194.

[11] Interestingly, both *Plagge* and *Teich* cite *Drye* regarding implied easements, but neither follows *Drye*'s obiter dictum concerning the bona fide purchaser defense. *Plagge*, 570 S.W.2d at 108, 110; *Teich*, 408 S.W.2d at 564-65.

unrecorded easements that have fallen into disuse and yet could still be the source of future disputes. Having determined that the bona fide purchaser defense can be used to defeat an implied easement by grant based on prior use, we now must consider whether appellants presented evidence sufficient to prove conclusively that they were bona fide purchasers without notice or at least raise a fact issue on the defense.

### b. Notice

A bona fide purchaser is one who acquires property in good faith, for value, and without notice, actual or constructive, of any third-party claim or interest. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Appellants presented evidence that they purchased their lots in good faith and for value, and the Wards do not significantly challenge that evidence. Instead, the Wards challenge appellants' evidence on the element of absence of notice, contending that appellants had actual and constructive notice of the easement because the easement is a highly visible dirt road across the tracts that they purchased.

Actual notice requires a showing of personal knowledge; constructive notice, on the other hand, is notice that the law imputes to a person who does not have personal knowledge. *See id*. (citing *Flack v. First Nat'l Bank*, 226 S.W.2d 628, 631 (Tex. 1950)); *Nguyen v. Chapa*, 305 S.W.3d 316, 323-24 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). A purchaser may be charged with notice if circumstances existed creating a duty in the purchaser to ascertain the rights of a third-party. *See Madison*, 39 S.W.3d at 606. When such a duty arises, the purchaser is charged with notice of all the party's claims which the purchaser might have reasonably discovered on proper inquiry, *i.e.*, the exercise of ordinary diligence and understanding. *See id*.; *Flack*, 226 S.W.2d at 632; *see also Miles v. Bodenheim*, 193 S.W. 693, (Tex. Civ. App.—Texarkana 1917, writ ref'd) (stating that a purchaser of property with an openly-used alleyway running across was chargeable with knowledge of the alley's existence and its use).

17

The question of whether a party is charged with notice is ordinarily a question of fact that becomes a question of law only when the evidence is such that there is no room for ordinary minds to differ on the conclusion to be drawn. *Nguyen*, 305 S.W.3d at 323 (citing *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146, 148 (1950)). Appellants contend that they conclusively proved the absence of notice or at least raised a fact question on the issue precluding summary judgment for the Wards.

### c. Reasonable Investigation

Appellants acknowledge that they knew about the dirt road but assert that they made reasonable inquiries prior to purchase and those inquiries led them only to the "special restriction" filed by the developer Cook.[12] In other words, appellants assert that since the special restriction explained the presence of the dirt road, they were not required to investigate further. We find, however, that appellants' inquiries were not reasonable under the circumstances.

In their respective affidavits, the Hamricks and Steve Bertram stated that they "first became aware of the Special Restriction when it was disclosed in" surveys of their respective properties prior to purchase. The surveys show only a "15' access easement" and note that the property is subject to certain restrictive covenants. Appellants do not indicate when they first saw the actual text of the special restriction or learned it had been filed as an appendix to the deed restrictions for Barrington Woods Subdivision.[13]

---

[12] The special restriction referenced an easement considerably narrower and more restrictive than that claimed by the Wards. Specifically, it indicated that a 15-foot wide "access easement" had been established across appellants' two tracts, providing Mrs. Gomez with access for herself, her family, and "social guests," and only for "not-for-hire" vehicles under a certain weight.

[13] Even had appellants read the special restriction, which mentions Mrs. Gomez and, by description, the two-acre tract, it would not have informed them who then owned the two-acre tract that was clearly being served by the dirt road. A check of the property records or an inquiry with Mrs. Gomez herself would have revealed that the Wards actually owned the property at the time appellants purchased their lots.

Furthermore, the special restriction states that if Mrs. Gomez required the use of heavier vehicles, Barrington Gardens was authorized for such use. At the time, however, a physical barricade and a one-

An analogous line of cases stands for the proposition that a prospective purchaser of real property cannot simply rely on deed recitations in the property records even when a possessor's possession appears to be consistent with those deed records. *See, e.g., 'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 939 (Tex. 1973) ("[Purchaser] is charged in law with constructive notice of such facts as would have been revealed had inquiry been made of [possessor] concerning its rights in th[e] tract."); *Collum v. Sanger Bros.*, 98 Tex. 162, 82 S.W. 459, 460 (1904) ("We think it a safe and salutary rule to require of a prospective purchaser of land . . . to go to the possessor and ascertain the nature and extent of his claim."); *see also In re Hayes*, No. Civ.A. SA-03-CA1228XR, 2004 WL 2926006, at *5-10 (W.D. Tex. 2004) (analyzing numerous Texas cases); *Aldridge v. Ne. I.S.D.*, 428 S.W.2d 447, 449-50 (Tex. App.—San Antonio 1968, writ ref'd n.r.e.) (same).[14]

Here, appellants did not examine the deed records or make inquiries of either the person expressly named in the special restriction or of the people who owned the tract described in the special restriction as being served by the dirt road. Under the reasoning of *'Moore' Burger*, *Collum*, and similar cases, simply examining the survey, or even the special restriction, was not a reasonable inquiry when appellants knew that a third party or third-parties were using, or had a right to use, the dirt road to access other property. As the supreme court stated in *Flack*,

> In such circumstances the person sought to be charged with notice is presumed to have knowledge of all that might have been discovered by investigation; that is to say, he is presumed to know whatever, by the diligent use of what information he has, and of the means in his power, he ought to know. Responsibility in such circumstances is the same in all respects as if the person sought to be charged actually knew, and he will not

foot reservation prevented access from the two-acre tract to that street, so the very terms of the special restriction were belied by observable facts on the property.

[14] While instructive, this line of cases is not necessarily controlling in the present case because this case deals only with a claimed easement across the land to be purchased and not actual possession by a third party of the land to be purchased. By definition, easements are non-possessory interests in land. *See Seber*, 350 S.W.3d at 646.

> be heard to allege ignorance. Means of knowledge, with the duty of using
> them, are thus deemed the equivalent of knowledge itself.

226 S.W.2d at 500 (internal quotation marks omitted). Simply reviewing the surveys, or even reading the special restriction, if that did occur, did not demonstrate the diligent use of available means and information.

### d. What Might Have Been Reasonably Discovered?

Having found that the Hamricks had a duty to ascertain information regarding the nature of the dirt road across the property and having found that the inquiry undertaken by the Hamricks was not reasonable, we next consider whether the evidence conclusively demonstrated, or at least raised a fact issue, regarding what a reasonable investigation would have revealed. As explained above, a subsequent purchaser can be held to notice of what the purchaser might have reasonably discovered on proper inquiry. *See Madison*, 39 S.W.3d at 606; *Flack*, 226 S.W.2d at 632. As discussed, the dirt road running across appellants' properties is highly visible and clearly serves the two-acre tract. It is unclear from the record whether appellants knew the Wards owned the two-acre tract at the time they purchased their tracts; however, either they knew or they would have discovered this fact had they inquired of Mrs. Gomez, who was the only one living on the property at that time, or examined the property records regarding ownership of the two-acre tract.

The summary judgment record does not reveal what Mrs. Gomez would have said had she been asked about the dirt road. For example, she may have explained that the dirt road had existed for a long time, or she might have known about the special restriction and thought that it fully encompassed her rights until her access to Barrington Gardens was opened. The record contains inconsistent information regarding what the Wards may have said had they been asked about the dirt road. In his affidavit, Tom Ward stated that he and his wife purchased the two-acre tract in 2004 "in reliance on the fact that we could continue the unrestricted use of the Road." However, in the deed of trust that they provided to their construction lender, JP Morgan, the property pledged, *i.e.*,

20

the two-acre tract, was described in part by reference to the special restriction. The implied easement by prior use which the Wards claim in the present lawsuit was not mentioned in the deed of trust.

Basically, while the Wards insist that they would have told appellants about the easement had they been asked in 2004, they did not inform their construction lender about the easement in 2005 but instead described their property by referencing the special restriction. Because of the uncertain and conflicting nature of the evidence regarding what a proper inquiry would have revealed, there is a material issue of fact on the absence of notice element of appellants' bona fide purchaser defense.[15] Accordingly, the

---

[15] The dissent contends that we err in determining that reasonable and fair-minded jurors could disagree as to what a prudent inquiry by the Hamricks would have revealed about the easement claimed by the Wards. The dissent instead views Tom Ward's affidavit as conclusive regarding what he would have told the Hamricks had they inquired about the easement in 2004. The affidavit, however, does not provide underlying facts supporting Ward's claimed knowledge of the easement rights, but says merely that he has "been familiar with the 2 acres and the use of the Road since 1985" and purchased the two acres and the easement in 2004. Such conclusory statements are no evidence of the matter they seek to prove. *See, e.g., Dolcefino v. Randolph*, 19 S.W.3d 906, 918 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *LeBlanc v. Lange*, No. 01-08-01029-CV, 2011 WL 4398537, at *8 (Tex. App.—Houston [1st Dist.] Sept. 22, 2011, no pet.).

The dissent further treats as "no evidence" the deed of trust, an affirmative statement by the Wards in 2005 describing the extent of the property that they owned and were pledging as collateral to their construction lender. The limited description of the easement therein suggests that the Wards may not at that time have had full knowledge of what they now claim as their easement rights.

The dissent correctly states that all reasonable inferences from the evidence must be credited to the non-movant in the summary judgment context. *See City of Keller*, 168 S.W.3d at 823. But the dissent then credits the Wards (movants) with an inference that the deed of trust may not have fully reflected their understanding of their easement rights at the time and rejects reasonable inferences favoring the Hamricks (nonmovants). Because the Wards described their property in a limited manner to their lender in 2005, a reasonable jury could infer that the Wards would have described the property in similar fashion to a prospective purchaser of the neighboring tract in 2004. Consequently, a fact issue exists on the question of what the Hamricks would have learned had they made proper inquiry of the Wards.

21

trial court erred in granting final judgment favoring the Wards. We sustain appellants' third issue in this regard.[16]

### 3. Estoppel

In issue four, appellants contend that the trial court erred in holding that they did not conclusively prove or even raise a fact issue regarding their estoppel affirmative defense. Essentially, this defense posits that the Wards are estopped from claiming an easement greater than that referenced in the deed of trust that they provided to JP Morgan. As explained above, the two-acre tract was described in that deed by reference to the special restriction, and the easement by prior use was not mentioned. The special restriction provides for a more narrow and considerably more restricted easement than the one now claimed by the Wards.

Estoppel by deed is a defense that precludes parties to a valid instrument from denying its force and effect. *See, e.g., Margas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied); 31 C.J.S. *Estoppel and Waiver* § 9 (2011). The effect of the doctrine is to prevent a party to a valid deed from denying the truth of the recitals therein. *E.g., Margas*, 310 S.W.3d at 571; 31 C.J.S. *Estoppel and Waiver* § 9. The doctrine is applicable in any controversy arising from the instrument itself or the transaction in which it was executed. *Moore v. Energy States, Inc.*, 71 S.W.3d 796, 799-800 (Tex. App.—Eastland 2002, pet. denied) (citing *Williams v. Hardie*, 85 Tex. 499, 22 S.W. 399, 401 (1893), et al.); *see also Sauceda v. Kerlin*, 164 S.W.3d 892, 915 (Tex. App.—Corpus Christi 2005) ("The doctrine may be invoked in a suit concerning a right arising out of a deed."), *rev'd on other grounds*, 263 S.W.3d 920 (Tex. 2008); 31 C.J.S.

---

[16] The Wards additionally argue that the dirt road was so well established on the property that a reasonable person would have realized it had been there longer than the special restriction had been on file. The Wards, however, fail to point to any evidence in the record supporting this contention. Furthermore, evidence regarding the appearance of the dirt road would be unlikely to conclusively demonstrate that appellants could have discovered the nature of the claimed easement upon proper inquiry.

*Estoppel and Waiver* § 9 ("It may be invoked only in a suit on the deed or concerning a right arising out of it.").

The Wards contend that the doctrine is inapplicable to the present case because the controversies in this case did not arise from the deed of trust or the transaction between the Wards and their construction lender. In their reply brief, appellants insist that the deed of trust is at issue in the present case because it is the basis for their deed of trust affirmative defense. However, if appellants were correct that simply raising a deed as part of a defense was enough to satisfy the rule that the estoppel by deed doctrine is applicable only to controversies arising from the instrument itself, then that requirement would be meaningless. Here, the controversy between the parties—whether the Wards have an implied easement by prior use over appellants' properties—did not arise from the deed of trust between the Wards and their lender. Accordingly, the estoppel by deed doctrine based on that deed of trust is not applicable to this case. We overrule appellants' fourth issue.

### 4. Waiver

In issue five, appellants assert that the court below erred in holding that they did not conclusively prove or even raise a fact issue regarding their affirmative defense of waiver. Specifically, appellants maintain that Mrs. Gomez waived the easement when she agreed to accept alternative access provided by the developer of Barrington Woods Subdivision, William Cook. The only law that appellants cite in support of their waiver argument is a quotation from *Utico Casualty Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008): "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."[17]

---

[17] Although not discussed by appellants, the court in *Utico Casualty* went on to present the elements of waiver, in the context of rights under an insurance policy, as "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." 262 S.W.3d at 778.

23

We need not dwell on the legal correctness of appellants' waiver argument, however, because even if we take it as a correct recitation of the applicable law, appellants failed to prove the defense conclusively or even raise a fact question. According to Mrs. Gomez's deposition testimony, when a representative of Cook, Duane Hoff, told her that they were going to close off the dirt road when they began constructing the subdivision, she informed him that they could not close it because it was her only way to access her property. Hoff then said that they would provide her other access, and Mrs. Gomez responded: "That's fine but you cannot block me out from my property." She further agreed in her testimony that she told Hoff that it was okay to close the dirt road so long as he provided her with another way out.

Appellants acknowledge, however, that Mrs. Gomez was never provided with alternative access to her property. Although they assert that the developer constructed Barrington Gardens Road up to Mrs. Gomez's property, they admit that the county reserved a one-foot strip and erected a barricade preventing access from Mrs. Gomez's property to the new road. Apparently, such access was prohibited because Mrs. Gomez's property had not been platted. Appellants further acknowledge that the two-acre tract was not platted, and the barrier was not removed, until well after the property, along with rights to the easement, were purchased by the Wards. In other words, the developer never provided alternative access for Mrs. Gomez, and indeed, Mrs. Gomez's access across the dirt road was never terminated.

In short, the evidence demonstrates at best that Mrs. Gomez agreed to waive her easement rights contingent on being provided other access, but such other access was never provided, and she never lost her right to use the easement. Since the contingency never occurred, Mrs. Gomez never effectively waived her rights. Accordingly, we overrule appellant's fifth issue.

24

## 5. Conclusion

The trial court did not err in finding that the Wards established the existence of an easement as a matter of law. The court also did not err in holding that appellants failed to conclusively prove any of their affirmative defenses and in holding that appellants failed to raise a fact issue on their affirmative defenses of estoppel and waiver. However, the trial court erred in granting final judgment on the Wards' easement claim because appellants presented a question of fact on their bona fide purchaser affirmative defense. Consequently, we will reverse and remand the trial court's judgment. We next consider the Wards' cross-appeal.

## IV. The Wards' Appeal

In their second issue, the Wards contend that the trial court erred in failing to provide a width for the easement. In their third issue, they contend the court erred in failing to adjudicate disposition of the Wards' injunction bond. And in issue four, they assert the court erred in awarding attorney's fees to appellants.[18]

## A. Width and Attorney's Fees

Because we are reversing and remanding the trial court's final judgment on the Wards' easement claim, we need not consider the Wards' contention that the trial court erred in failing to specify the width of the easement established. Similarly, because we are reversing and remanding substantive issues for further proceedings, we also reverse and remand the trial court's awards of attorney's fees to both sides. The trial court may reexamine these awards as appropriate based on the ultimate outcome in the case. Consequently, the Wards' second and fourth issues are overruled.

---

[18] In their first issue, the Wards argued that the trial court's judgment was not final. We addressed and overruled that contention above.

## B. Injunction Bond

Lastly, the Wards contend that the trial court erred in failing to expressly adjudicate the disposition of the injunction bond appellants posted when they first applied for and received an injunction against the Wards. The Wards suggest that they were entitled to receive the bond because the injunction was terminated by operation of law when judgment was entered in their favor.

It is unclear from the record what, if anything, has happened to the injunction bond. The law is clear, however, that an enjoined party is entitled to recover on the bond "only for the damages resulting directly from the issuance of the temporary injunction." *Groschke* v. *Gabriel,* 824 S.W.2d 607, 615 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The Wards do not argue that they proved (or even pleaded for) such damages. Consequently, the trial court did not err in refusing to award bond proceeds to the Wards. To the extent the trial court is required to take any further action in regards to the injunction bond, it can do so on remand. We overrule the Wards' fourth issue.

We reverse and remand the trial court's judgment for further proceedings in accordance with this opinion.


/s/  Martha Hill Jamison
   Justice


Panel consists of Justices Frost, Jamison, and McCally. (Frost, J. concurring and dissenting).

26