**Reversed and Remanded and Majority and Dissenting Opinions filed September 10, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-01141-CV

---

**UNION PACIFIC RAILROAD COMPANY, Appellant**

**V.**

**CHARLES SEBER AND BARBARA SEBER, Appellees**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-64372**

---

## M A J O R I T Y   O P I N I O N

Charles and Barbara Seber sued Union Pacific Railroad Company contending that it wrongfully removed the Sebers' private railroad crossing. The Sebers claimed a right to use the crossing pursuant to an implied easement by prior use. The trial court granted summary judgment in favor of the Sebers, declaring that the Sebers have a right to use the crossing and ordering Union Pacific to reinstall the crossing. Additionally, the trial court denied Union Pacific's no-

evidence summary judgment motion. The trial court signed a final judgment incorporating the earlier interlocutory order granting summary judgment; the final judgment also awarded the Sebers attorney's fees based on a bench trial. Union Pacific appealed the trial court's summary judgment orders and final judgment.

The Texas Supreme Court clarified the law on implied easements in *Hamrick v. Ward*, 446 S.W.3d 377 (Tex. 2014), while this appeal was pending. Relying on *Hamrick*, we conclude that the Sebers cannot assert an implied easement by prior use. Accordingly, we reverse the trial court's final judgment based on an order granting the Sebers' motion for summary judgment. We remand the case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND[1]

Union Pacific's predecessor in interest condemned a railroad right-of-way along Hufsmith-Kuykendahl Road in 1902 along with a 1.5 acre tract of land adjoining the right-of-way, which the railroad used for a section house. The railroad constructed a crossing over the right-of-way, which permitted access between the otherwise landlocked 1.5 acre tract and Hufsmith-Kuykendahl Road. The 1.5 acre tract later was severed from the right-of-way and conveyed to a number of different owners until it became part of a larger tract of land, which the Sebers now own.

The Sebers' larger tract of land is landlocked along its northern and eastern boundaries. The property's western boundary abuts Stuebner-Airline Road. Union Pacific's railroad right-of-way runs along the property's entire southern boundary. The Sebers accessed their property from both Stuebner-Airline Road and the

---

[1] We state only the relevant title history that the parties do not dispute, unless otherwise noted. We express no opinion on whether our account of the title history is accurate as a matter of law.

railroad crossing to Hufsmith-Kuykendahl Road until 2008, when Union Pacific permanently removed the railroad crossing.[2] The Sebers now access their property only from Stuebner-Airline Road.



The parties' dispute in this, their second appeal to this court, is whether Union Pacific violated the Sebers' rights when it removed the railroad crossing to Hufsmith-Kuykendahl Road in 2008. We recount the case's procedural history in detail to clarify the parties' contentions. We also address an intervening decision from the Supreme Court of Texas that affects our disposition of this appeal.

## I. The First Appeal

The Sebers filed suit on October 30, 2008, alleging that Union Pacific's

---

[2] A Union Pacific manager explained at his deposition: "[A] crossing usually consists of some type of planking surface, concrete, timber, asphalt, something like that, on top of the track structure. Then there's a roadway approach that touches that. So [in closing a crossing] we would traditionally remove the planking and pull the roadway back to open the ditches up if there are ditches there. . . . The crossing boards are removed and set either side of the track blocking the crossing. That's all we did at that time."

removal of the private railroad crossing was "wrongful, constituted a trespass, and was done in derogation of [their] vested rights." The Sebers sought a declaratory judgment that they were entitled to use the crossing and a mandatory injunction requiring Union Pacific to replace the crossing. Alternatively, the Sebers sought monetary damages, including exemplary damages, for (1) inverse condemnation of their right to use the crossing; and (2) Union Pacific's interference with their "vested property rights."

Union Pacific filed a motion for traditional summary judgment and contended that (1) the Sebers had no legal right to use the crossing; (2) Union Pacific's railroad right-of-way entitled it to exclude the Sebers; (3) the Sebers' claims were preempted by federal law; (4) the Sebers' trespass claim failed as a matter of law; and (5) the Sebers could not obtain exemplary damages.[3]

The Sebers filed a motion for partial summary judgment contending that Union Pacific's predecessor in interest conveyed an express easement to use the crossing to the Sebers' predecessor in title.

The trial court signed an order on January 26, 2010, granting Union Pacific's motion for summary judgment. The Sebers timely appealed.

On appeal, we affirmed the trial court's (1) summary judgment in favor of Union Pacific with respect to the Sebers' trespass and exemplary damage claims; and (2) denial of the Sebers' partial summary judgment motion. *See Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 656 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Additionally, we determined that the property deeds filed as summary judgment evidence did not grant the Sebers' predecessor in title an

---

[3] Union Pacific also filed a no-evidence summary judgment motion; however, the trial court did not rule on the no-evidence motion and we did not consider the motion on appeal. *See Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 645 n.2 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

express easement to use the railroad crossing. *See id.* at 647. We determined, however, that a fact issue existed as to whether the Sebers had an implied easement to use the railroad crossing. *See id.* at 650.

We surveyed the law on implied easements in making our decision, noting at the outset that "potentially confusing terminology pertaining to implied easements [made] it more difficult to identify, apply, and analyze the correct governing framework." *Id.* at 647. We discussed two types of implied easements, which we referred to then and will refer to now as "easements by necessity" and "easements by prior use." *Id.* at 647-48, 648 n.4.

"An easement by necessity has three requirements: (1) unity of ownership of both parcels prior to separation; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of severance." *Id.* at 648 (citing *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984)). On the other hand, we stated: "A party claiming an easement by prior use must prove that at the time of the severance: (1) both parcels were under unified ownership; (2) the use was apparent; (3) the use was continuous; and (4) the use was necessary to the use of the dominant estate." *Id.* (citing *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966) and *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962)).[4]

"The Sebers expressly den[ied] that they claim[ed] an easement by necessity." *Id.* at 649. We determined that the dispute "center[ed] on an easement by prior use." *Id.* We then focused on the fourth element for establishing an easement by prior use — that the party claiming the easement must prove that, at the time the dominant and servient estates were severed, the "use was necessary to

_____

[4] An easement appurtenant requires a dominant and a servient estate. *See Drye*, 364 S.W.2d at 207; *Seber*, 350 S.W.3d at 646. The dominant estate is the estate to which the easement attached; the servient estate is subject to the use of the dominant estate to the extent of the easement granted or reserved. *See Drye*, 364 S.W.2d at 207; *Seber*, 350 S.W.3d at 646.

the use of the dominant estate." *See id.* at 648-49; *see also Bickler*, 403 S.W.2d at 357; *Drye*, 364 S.W.2d at 207.

We determined that Texas law required the Sebers to show "only reasonable necessity," rather than "strict necessity," to establish an implied easement because the Sebers alleged an implied grant of an easement and not an implied reservation of an easement. *Id.* at 649 (citing *Mitchell v. Castellaw*, 246 S.W.2d 163, 168 (Tex. 1952) and *Howell v. Estes*, 12 S.W. 62, 62-63 (Tex. 1888)). We further determined that the "relevant timeframe for proving reasonable necessity [was] the point at which the 1.5 acre tract was severed," and that the Sebers did not have to show that the implied easement remained a "continued necessity" at all times after severance, including "when the Sebers became owners of the larger tract of land." *See id.* at 649-50, 650 n.5.

Applying our interpretation of Texas implied easement law and the relevant standard of review, we held "that the grounds asserted in Union Pacific's . . . summary judgment motion did not establish as a matter of law that the Sebers [were] foreclosed from invoking a right to use the crossing pursuant to an implied easement by prior use." *Id.* at 650. We also held that Union Pacific's railroad right-of-way did not entitle it to exclude the Sebers from the crossing and that federal law did not preempt the Sebers' claims. *See id.* at 651-52. Accordingly, we reversed the trial court's summary judgment order with respect to the Sebers' claims, other than their claims for trespass and exemplary damages. *See id.* at 656. We remanded the case to the trial court for proceedings consistent with our opinion. *See id.*

## II. The Second Appeal

The Sebers amended their petition following remand. They requested a mandatory injunction requiring Union Pacific to replace the railroad crossing and a

declaratory judgment "that they [had] obtained the right to use the railroad crossing as an implied easement, based on the prior use of the land." The Sebers, alternatively, requested "all appropriate monetary relief."

The Sebers filed a motion for traditional summary judgment in which they contended that (1) Union Pacific's predecessor in interest severed the 1.5 acre tract from the railroad right-of-way in 1959; and (2) at the time of severance, an easement to use the railroad crossing was reasonably necessary. The Sebers argued that these circumstances established an implied easement by prior use. The Sebers attached as summary judgment evidence a 1959 deed purporting to transfer the 1.5 acre tract from Union Pacific's predecessor in interest to W.E. Simpson, whom the Sebers asserted was their predecessor in title. The Sebers also attached to their motion Barbara Seber's affidavit, in which she averred that the railroad crossing was apparent in 1959 and in continuous use since at least 1902.

Union Pacific contended the Sebers had not established that the 1959 deed conveyed an interest in the 1.5 acre tract and, therefore, the Sebers had not proved unity of ownership of the dominant and servient estates at the time of severance. According to Union Pacific, the 1902 condemnation decree did not award fee simple title to the right-of-way and the 1.5 acre tract to Union Pacific's predecessor in interest. Union Pacific argued that its predecessor in interest had a lesser interest in the condemned property that reverted back to the original owner when the property ceased to be used for railroad purposes. Union Pacific argued that this reversion occurred before execution of the 1959 deed because the deed states: "The property herein described is not used or useful for railroad purposes." Union Pacific also argued that the Sebers had not proved through Barbara Seber's affidavit that the crossing was apparent and continuously used in 1959 and earlier because Barbara Seber's affidavit was not based on personal knowledge, was

7

conclusory, could not be readily controverted, and was inconsistent with her deposition testimony.

Union Pacific also filed a no-evidence summary judgment motion, in which it contended that the Sebers could not establish an implied easement by prior use because the Sebers had no evidence that (1) the 1959 deed conveyed an interest in the land; and (2) the railroad crossing existed or was in use in 1959. The Sebers responded to Union Pacific's no-evidence summary judgment motion with substantially the same evidence they relied on in their summary judgment motion.

The trial court granted the Sebers' traditional motion for summary judgment on January 27, 2012, and denied Union Pacific's no-evidence summary judgment motion on February 17, 2012. The case proceeded to a bench trial on attorney's fees. The trial court signed a final judgment on September 25, 2013, in which it awarded the Sebers $126,875 in reasonable and necessary attorney's fees along with additional amounts contingent upon successful defense of the judgment on appeal. Union Pacific timely appealed.

Union Pacific argues in two issues that the trial court erred in applying the law on implied easements by prior use to the summary judgment evidence. It argues, as it did in the trial court, that its predecessor in interest "lost ownership" of the 1.5 acre tract of land before it executed the 1959 deed. Union Pacific also argues that Barbara Seber's affidavit is no evidence, or at a minimum no conclusive evidence, that the crossing was being used in 1959. In a third issue, Union Pacific contends that the trial court erred in granting attorney's fees to the Sebers because they should not have prevailed on their claims.

## III.  *Hamrick v. Ward*

The Texas Supreme Court decided *Hamrick v. Ward*, 446 S.W.3d 377 (Tex.

2014), after the parties filed their appellate briefs. The supreme court used *Hamrick* "to provide clarity in an area of property law that ha[d] lacked clarity for some time: implied easements." *Id.* at 379. In *Hamrick* the supreme court held that the easement-by-necessity doctrine — and not the easement-by-prior-use doctrine — must apply "to claims of landowners asserting implied easements for roadway access to their landlocked, previously unified parcel." *Id.* at 379; *see id.* at 382.

The supreme court described the facts of the case as follows. A landowner constructed a dirt road along the eastern edge of his 41.1 acre parcel of land in the 1930s. *Id.* at 379. The landowner later severed the parcel into a two-acre parcel and a 39.1 acre parcel. *Id.* The landowner sold the two-acre parcel in the 1950s to a couple who used the dirt road to access their property. *Id.* The 39.1 acre parcel was sold to a developer for construction of a subdivision in the 1990s. *Id.* The developer paved roads within the larger parcel and planned to construct a paved driveway to connect the two-acre parcel to one of the subdivision's newly paved roads. *Id.* The county, however, refused the developer permission to connect the two-acre parcel to one of the newly paved roads because the two-acre parcel had not been platted. *Id.* In response, the developer unilaterally filed a special restriction amendment to the subdivision's deed restrictions. *Id.* The special restriction purported to create a prescriptive easement along the dirt road for the owner of the two-acre parcel to access her property. *Id.* at 379-80. The developer then sold lots over which the dirt road ran to homebuyers, whom the court referred to collectively as "the Hamricks." *Id.* at 380.

Tom and Betsey Ward purchased the two-acre parcel of land in the 2000s. *Id.* They reinforced the dirt road with gravel and made use of the road to begin construction of a new home. *Id.* The Hamricks sued to enjoin the Wards from using the dirt road. *Id.* The trial court granted a temporary injunction, which

9

prevented the Wards from using the dirt road for construction of their home. *Id.* As a result, the Wards platted their property and built a driveway to provide the Wards with access to one of the subdivision's newly paved roads. *Id.* The Wards then completed construction of their home. *Id.* The Wards filed a counterclaim against the Hamricks arguing that they had an implied easement by prior use to use the dirt road; the Wards requested a declaratory judgment regarding their right to an easement. *Id.*

The trial court granted the Wards' motion for summary judgment after determining that the Wards had conclusively established the existence of an easement by prior use. *Id.* The Hamricks appealed, and the court of appeals determined that the summary judgment evidence conclusively established beneficial use of the road prior to severance and the necessity of the road. *See id.*; *Hamrick v. Ward*, 359 S.W.3d 770, 776-79 (Tex. App.—Houston [14th Dist.] 2011), *rev'd,* 446 S.W.3d 377 (Tex. 2014). The court of appeals unanimously held that the Wards were required to prove necessity only at the time of severance, rather than continuing necessity. *See Hamrick*, 446 S.W.3d at 380; *Hamrick*, 359 S.W.3d at 777. The court of appeals remanded because it determined that a fact issue remained with respect to one of the Hamricks' asserted defenses. *See Hamrick*, 446 S.W.3d at 380; *Hamrick*, 359 S.W.3d at 785.

The Hamricks appealed to the Texas Supreme Court. They argued that the court of appeals erred by concluding that the Wards were required to demonstrate the necessity of the easement only at the time of severance. *Hamrick*, 446 S.W.3d at 381. The Wards countered that the supreme court had never required continued necessity for easements by prior use. *Id.* The supreme court determined that the Wards could not prevail on an implied easement by prior use. *Id.* It held that "the applicable doctrine for roadway access to previously unified, landlocked parcels is

10

the necessity easement." *Id.*[5]  The court remanded the case to the trial court because the Wards only pleaded theories of easement by prior use and easement by prescription.  *Id.* at 385.  The court would not "foreclose the Wards from bringing a necessity easement claim in light of [the court's] clarification of the law."  *Id.*

In reaching its decision, the supreme court stated:

> To successfully assert [an easement by necessity], the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed. . . .  As this analysis makes clear, a party seeking a necessity easement must prove both a historical necessity (that the way was necessary at the time of severance) and a continuing, present necessity for the way in question.

*Id.* at 382.  Additionally, a party seeking an easement by necessity must prove strict, rather than reasonable necessity.  *Id.* at 379, 384.

## IV.  Post-*Hamrick* Supplemental Briefing

Union Pacific filed a supplemental brief in this court after the supreme court issued *Hamrick.*  Union Pacific argued that the Sebers are claiming a roadway easement to a landlocked, previously unified parcel of land; therefore, Union Pacific contends, the Sebers must pursue an easement by necessity theory under *Hamrick.*  Union Pacific further argues that the Sebers cannot prevail on an easement-by-necessity theory because the crossing over Union Pacific's railroad right-of-way ceased to be necessary when the 1.5 acre tract of land became part of the larger tract that borders Stuebner-Airline Road to the west.  Union Pacific requested that judgment in favor of the Sebers be reversed and judgment rendered in favor of Union Pacific.  Alternatively, it requested that we remand the case to

---

[5] The supreme court referred to the two types of implied easements as "prior use easements" and "necessity easements."  *Hamrick*, 446 S.W.3d at 381.

the trial court for development of the easement-by-necessity issue.

The Sebers responded that the railroad crossing between their property and Hufsmith-Kuykendahl Road is not a roadway; therefore, they contend that *Hamrick* does not control. The Sebers argued that the railroad crossing is instead an "improvement" and that *Hamrick* did not "impact the continued ability of such improvements to qualify as [easements by prior use]." *See id.* at 384-85. The Sebers requested that we affirm the trial court's judgment because the evidence established an easement by prior use. Alternatively, the Sebers requested that we remand the case if we determine the crossing to be a roadway so that the trial court can consider the issue of easement by necessity and other easement theories the Sebers may assert in light of *Hamrick*.

## ANALYSIS

## I.      The Sebers' Traditional Motion for Summary Judgment

We consider first whether the railroad crossing between the Sebers' property and Hufsmith-Kuykendahl Road is a "roadway" or "other improvement." *See id.* at 384-85. Our resolution of this question determines the controlling implied easement law under *Hamrick*, which, in turn, affects our analysis of whether the trial court erred in granting traditional summary judgment in favor of the Sebers. *See id.*; *see also* Tex. R. Civ. P. 166(a)(c) (a traditional summary judgment movant must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (an appellate court reviews the trial court's summary judgment *de novo*).

*Hamrick* determined that the dirt road at issue in that case, which later was reinforced with gravel, was a roadway. *Hamrick*, 446 S.W.3d at 385. The court

12

stated:

> Roadways by nature are typically substantial encumbrances on property, and we accordingly require strict, continuing necessity to maintain necessity easements. By contrast, we created and have primarily utilized the prior use easement doctrine for lesser improvements to the landlocked parcel, such as utility lines that traverse the adjoining tract. We have required, to some degree, a lesser burden of proof for prior use easements (reasonable necessity at severance rather than strict and continued necessity) because they generally impose a lesser encumbrance on the adjoining tract (*e.g.*, a power line compared to a roadway).

*Id.* at 379.

The supreme court summarized the development of implied easement law. *See id.* at 381-84. The court recognized in *Alley v. Carleton*, 29 Tex. 74 (1867), that an implied easement by necessity "results when a grantor, in conveying or retaining a parcel of land, fails to expressly provide for a means of accessing the land." *Hamrick*, 446 S.W.3d at 382 (citing *Alley*, 29 Tex. at 78). The implied easement by necessity facilitates "continued productive use of the landlocked parcel." *Id.*

Two decades after *Alley* was decided, the supreme court found the framework established for easements by necessity "to be ill suited for other improvements that nonetheless are properly construed as implied easements." *Id.* These "other improvements" included the use of a stairwell in an adjacent building, the right to graze cattle on an exposed lakebed, and the recreational use of adjoining property. *Id.* at 382-84 (citing *Howell*, 12 S.W. at 62), *Ulbricht v. Friedsam*, 325 S.W.2d 669, 677 (Tex. 1959), and *Drye*, 364 S.W.2d at 208). The court established a doctrine of easement by prior use "for assessing whether to recognize implied easements for improvements across previously unified adjoining property." *Hamrick*, 446 S.W.3d at 383. The doctrine of easement by prior use

13

applied as follows: "'[I]f an improvement constructed over, under, or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character . . . the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed.'" *Id.* (citing *Howell*, 12 S.W. at 63). The court applied the easement by prior use doctrine to, among other things, "'a part[ition] wall,' 'a drain or aqueduct,' 'a water [gas] or sewer line into the granted estate,' 'a drain from the land,' 'light and air,' 'lateral support,' and 'water.'" *Id.* at 384 (citing *Drye*, 364 S.W.2d at 207-08).

The supreme court recognized that "the express elements required for prior use easements do not restrict themselves to certain easement purposes." *Id.* In at least one prior case, "a party pursued a prior use easement (rather than a necessity easement) for roadway access to a previously unified, landlocked parcel." *Id.* at 385 (citing *Bickler*, 403 S.W.2d at 357).[6] Nevertheless, the supreme court "developed the two types of implied easements for discrete circumstances. The less forgiving proof requirements for necessity easements (strict and continuing necessity) simply serve as acknowledgment that roadways typically are more significant intrusions on servient estates. By contrast, improvements at issue in prior use easements (*e.g.*, water lines, sewer lines, power lines) tend to involve more modest impositions on servient estates." *Id.* at 384. According to *Hamrick*: "Applying this distinction to the Wards' claimed easement does not entail prolonged analysis. Their claimed easement concerns a roadway to access a

---

[6] *Bickler* held that an easement to use a driveway attached to the dominant estate under the doctrine of implied easement by prior use because there was no other legal access to and from the dominant estate. *Bickler*, 403 S.W.2d at 356-59. Similarly, *Ulbricht* held that an easement to graze cattle on an exposed lakebed and an easement to access property from the lake attached to the dominant estate under the doctrine of implied easement by prior use. *Ulbricht*, 325 S.W.2d at 677; *see Hamrick*, 446 S.W.3d at 384 n.9.

14

previously unified, landlocked parcel. This is precisely the factual scenario for which we created the necessity easement doctrine well over a century ago, and . . . the Wards must pursue a necessity easement rather than a prior use easement." *Id.* at 385.

Relying on *Hamrick*, the Sebers argue: "Here, the easement at issue is over an improvement — a crossing that the railroad constructed over its tracks. This improvement is the type that [*Hamrick*] held constitutes a lesser encumbrance on property than does a roadway, and to which the [easement by prior use] doctrine still applies." The Sebers provide a dictionary definition of "improvement" as "'[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance.'" (quoting BLACK'S LAW DICTIONARY 761 (7th ed. 1999)). The Sebers argue that *Hamrick*'s holding does not apply to "improvements" such as the crossing, but applies instead only to "roadways."

We determine, upon a close reading of *Hamrick*, that the Sebers misconstrue *Hamrick*'s reasoning and holding. *Hamrick* did not create a dichotomy between "roadways" and "improvements." Instead, *Hamrick* treated a roadway as an "improvement," and it discussed easements by prior use as applicable to "other improvements" that "involve more modest impositions on servient estates." *See id.* at 383-84.

The railroad crossing at issue in this case provided access to Hufsmith-Kuykendahl Road for the 1.5 acre tract after it became landlocked. The crossing also provided a means to travel over the railroad right-of-way. This "improvement" — as both a roadway access and a means to travel over a railroad right-of-way — is at least as significant an intrusion on the railroad right-of-way as roadway access was on the servient estates in *Hamrick*. *See id.* at 385; c*f. City of*

15

*Houston v. Goings*, 795 S.W.2d 829, 832 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("A public bridge forming a connecting link in a street or highway is a part of that street or highway."). The improvement at issue here is more akin to a roadway and less akin to "more modest impositions" such as water, sewer, or power lines. *See Hamrick*, 446 S.W.3d at 384. Based on the reasoning and holding of *Hamrick*, we conclude that the Sebers must pursue an easement by necessity for roadway access over the railroad right-of-way. *See Hamrick*, 446 S.W.3d at 384-85.

It follows that the trial court erred in granting summary judgment in favor of the Sebers on their pleaded theory of easement by prior use. To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We review a trial court's summary judgment *de novo*. *Valence*, 164 S.W.3d at 661. We hold that the Sebers are not entitled to summary judgment on their pleaded easement by prior use claim because the Sebers cannot prevail on this claim as a matter of law. *See* Tex. R. Civ. P. 166(a)(c); *Hamrick*, 446 S.W.3d at 385-86; *Valence*, 164 S.W.3d at 661. We reverse the trial court's final judgment based on the January 27, 2012 summary judgment order.

## II.      Remand in the Interest of Justice

The Sebers did not plead an easement by necessity theory and — until this point in the litigation — have expressly denied relying on such a theory. The Sebers nevertheless request that we remand the case to allow the Sebers an opportunity to plead and prove an easement by necessity theory or any other easement theory that is not foreclosed by *Hamrick*. The Sebers argue that they should be allowed the same opportunity on remand that was afforded to the Wards

16

in *Hamrick*. *See Hamrick*, 446 S.W.3d at 385 ("Although we refrain from opining as to whether the Wards will ultimately prevail on a necessity easement claim, our clarification of the law entitles them to the opportunity to plead and prove such a claim.").

Union Pacific argues in its post-*Hamrick* supplemental brief that (1) the Sebers' only available claim is for an implied easement by necessity; and (2) any easement by necessity terminated when the 1.5 acre tract was joined with the larger tract that has access to Stuebner-Airline Road. Union Pacific requests that we render judgment in its favor and remand the case to the trial court to determine Union Pacific's attorney's fees award. Union Pacific also states: "If this Court is concerned that the implied easement by necessity argument was not fully developed in the trial court, then — like the Supreme Court did in *Hamrick* — it can remand for further development of that issue."

Union Pacific argued in its no-evidence motion for summary judgment that the Sebers could not proffer evidence to support required elements of an easement by prior use. Union Pacific understandably did not move for summary judgment on an as-yet unpleaded claim for easement by necessity. Union Pacific understandably did not argue in its motion for summary judgment that access to Stuebner-Airline Road prevented the Sebers from establishing an easement by necessity after the larger tract was joined with the 1.5 acre tract; the Sebers were not pursuing a claim based on an easement by necessity at the time, and *Hamrick* had not yet been decided.

Under these circumstances, the trial court could not properly have granted summary judgment in favor of Union Pacific on an easement by necessity claim, which had not been pleaded, and which had not been addressed in Union Pacific's no-evidence motion for summary judgment. *See Johnson v. Brewer & Pritchard,*

17

*P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) ("A court cannot grant summary judgment on grounds that were not presented."); *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) ("[A] trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion."); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 922 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("The trial court may not grant summary judgment as a matter of law on a cause of action not addressed in the summary judgment proceeding."). Union Pacific does not cite any authority for the proposition that we may render judgment under these circumstances. *Cf. Hamrick*, 446 S.W.3d at 385 ("[W]e procedurally cannot hold that the Wards prevailed on a theory they have not advanced in the trial court."). We reject Union Pacific's request to render judgment in its favor with respect to an easement by necessity theory that was not pursued in the trial court.

Furthermore, we have broad discretion to remand a case in the interest of justice after reversing the trial court's judgment. *See* Tex. R. App. P. 43.3(b); *Ahmed v. Ahmed*, 261 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Chrismon v. Brown*, 246 S.W.3d 102, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (a court of appeals, unlike the Texas Supreme Court, cannot remand in the interest of justice without first reversing the trial court's judgment). We may exercise our discretion to remand as long as there is a probability that the case, for any reason, has not been fully developed. *See Ahmed*, 261 S.W.3d at 196. We also may remand if a case needs further development because it was tried on an incorrect legal theory. *Id.*

We have determined that summary judgment in favor of the Sebers based on an easement-by-prior-use theory is erroneous because an easement by prior use is unavailable to the Sebers following *Hamrick*. The Sebers asserted at oral argument

18

that access to their property from Stuebner-Airline Road is impeded during certain times of the year due to wet conditions. The parties have not adequately developed facts or arguments regarding whether this impediment or other circumstances affect the Sebers' right, if any, to an easement by necessity. *See Mitchell v. Castellaw*, 246 S.W.2d 163, 168 (1952) ("[E]ven the term 'strict necessity' is not hopelessly inelastic for sensible application to varying sets of facts."). Under the circumstances, we remand the case in the interest of justice to allow the Sebers an opportunity to plead and pursue an easement-by-necessity theory or any other easement theory that has not been foreclosed by *Hamrick*, and to allow the parties to develop facts and arguments accordingly. *See* Tex. R. App. P. 43.3(b).

The dissent misses the mark by contending it is erroneous to remand in the interest of justice, and to do so "without addressing the railroad company's rendition arguments" asserting there is no evidence on two elements of a claim for easement by prior use.

The dissent does not contend that we can ignore *Hamrick*. The dissent stops well short of concluding that a necessity easement claim does not fit the circumstances here under *Hamrick*. The dissent does not explain how any useful purpose would be served by determining on appeal whether the Sebers proffered evidence on two particular elements of a prior-use easement claim that is unavailable to them as a matter of law after *Hamrick*. If such a claim is legally unavailable to the Sebers, then purported fact issues on particular elements of the legally unavailable claim are not "material" under Texas Rules of Civil Procedure 166a(c) and (i); further, discussing immaterial fact issues is not "necessary to final disposition of the appeal" under Texas Rule of Appellate Procedure 47.1.

The dissent's main thrust appears to be that rendition arguments must be decided before remand arguments under the general rule discussed in *Bradleys'*

19

*Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) ("Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points that would afford the party the greatest relief.") (citing Tex. R. App. P. 43.3). But the general rule has exceptions. One of those exceptions allows a remand in "the interests of justice" in appropriate circumstances. *See* Tex. R. App. P. 43.3(b).[7]

The appropriate circumstances for a remand in the interest of justice are present here in light of *Hamrick*'s clarification of many decades of muddled terminology and less-than-clear analysis accompanying efforts to distinguish between implied prior-use easements and implied necessity easements. *See Hamrick*, 446 S.W.3d at 381-82, 384-85. In their supplemental briefs, Union Pacific and the Sebers both have invited this court to remand for further proceedings in light of *Hamrick*. We believe the appropriate course is to exercise our discretion under Texas Rule of Appellate Procedure 43.3(b); accept an invitation extended by both parties; and follow *Hamrick*'s lead by remanding so that we do "not foreclose the [Sebers] . . . from bringing a necessity easement claim in light of [*Hamrick*'s] . . . clarification of the law." *See Hamrick*, 446 S.W.3d at 385.

---

[7] Relying on *Natural Gas Pipeline Company of America v. Pool,* 124 S.W.3d 188, 201 (Tex. 2003), the dissent contends it is invoking a distinct "greatest-degree-of-finality rule" that is separate from the general admonition to determine rendition issues before remand issues. *Ante* at 4-5. *Pool* immediately followed this phrase by citing and discussing *Bradleys' Electric*. *See Pool*, 124 S.W.3d at 201 (citing *Bradleys' Elec., Inc.*, 995 S.W.3d at 677). Therefore, it is questionable at best whether use of the phrase "greatest degree of finality" in *Pool* announces a free-standing decisional "rule" that is distinct from the general direction to address rendition issues first as discussed in *Bradleys' Electric* and many other cases. In any event, nothing about the appearance of this phrase in *Pool* suggests that the supreme court intended to restrict the availability of remand in the interest of justice in appropriate circumstances – or to read implicit limits into Texas Rule of Appellate Procedure 43.3 that do not appear in the rule's text.

## CONCLUSION

We reverse the trial court's September 25, 2013 final judgment, which incorporates the erroneous January 27, 2012 summary judgment order. In light of our disposition, we do not assess the propriety of the trial court's denial of Union Pacific's no-evidence summary judgment motion, which was aimed solely at the Sebers' claim for an easement by prior use. We reverse the trial court's final judgment awarding attorney's fees to the Sebers because the fee award was predicated on the trial court's erroneous summary judgment in favor of the Sebers on an easement-by-prior-use claim that is unavailable to the Sebers after *Hamrick*. We remand the case to the trial court for further proceedings consistent with this opinion.


/s/   William J. Boyce
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally. (Frost, C.J. dissenting opinion).